IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DEBRA GASSMAN** | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. |
| **COOK COUNTY** and **SHARONE R. MITCHELL, JR.**, solely in his Official Capacity as the **PUBLIC DEFENDER OF COOK COUNTY**, | ) Judge ) Magistrate Judge ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

DEBRA GASSMAN ("Plaintiff" or "Debra") complains of the Defendants COOK COUNTY and SHARONE R. MITCHELL, JR., solely in his Official Capacity as the PUBLIC DEFENDER OF COOK COUNTY ("CCPD") as follows:

### Nature of the Action

*"I marvel at the resilience of the Jewish people. Their best characteristic is their desire to remember."* -- Elie Wiesel

1. Plaintiff Debra Gassman is a proud public defender who has devoted her life to defending our community's poor and vulnerable population.

2. For over 20 years, Debra has proudly displayed on her CCPD office wall one of her most prized possessions--a picture taken of herself while volunteering in the Israeli Defense Forces. Just as Debra now devotes her life to defending her clients, the photograph is a statement to remember that Jewish people have a right to defend themselves against the attempted exterminations that have occurred against them throughout history.

1

3. On October 7, 2023, Hamas, the Iran-backed terror group controlling Gaza, launched an unprovoked and vicious surprise attack on Israel. These terrorists infiltrated Israel to murder and kidnap Israelis. In this attack, Hamas murdered over 1,300 Israelis, wounded 12,000 and took over 230 hostages into Gaza—including babies under 1 year of age and young children. During this infiltration, Hamas members brutally raped Israeli girls and women, while mutilating their genitalia, cutting off body parts and then murdering the victims.

4. Debra was devastated by the attacks. To raise awareness of what had occurred in Israel, she displayed the photograph to her co-workers by putting it on the employee mailbox where other employees were allowed to put photos and decorations. Debra was ordered to remove the photograph and CCPD executive management reprimanded her for putting it there. Without incident, she promptly removed it as instructed.

5. Thereafter, Debra put the photograph back into her private office. CCPD Deputy Parle Roe-Taylor came to Debra's assigned courthouse and confiscated the photograph during an unannounced and unprecedented search of her private office. Roe-Taylor then prohibited her from displaying the photo even *inside* her own office where it had been displayed for over 20 years. CCPD Deputies claimed that this photograph could provoke violence and was akin to displaying a Nazi swastika.

6. Debra files this Action so she can continue to display the beloved photograph inside her CCPD office without fear of censorship, discipline, or termination--just as she has for over 20 years without issue and until October 7.

## Jurisdiction and Venue

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, U.S. Const. amend. I, amend. XIV; 42 U.S.C. § 1983; and 28 U.S.C. §§ 2201-2202.

8. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391 because Defendants reside in this District and the events giving rise to this suit occurred therein.

## The Parties

9. The Plaintiff Debra Gassman has been an Assistant Public Defender since 1997. She loves her job, her direct supervisors, and her Chief. She brings this Action as a result of the executive management at CCPD who have imposed a censorship mandate based on the content of her expression through the photograph discussed below.

10. The CCPD is an independent agency within the County and provides legal representation to indigent persons in criminal and related proceedings and is organized under the laws of Illinois, 55 ILCS 5/3-4000 et seq. Sharone R. Mitchell, Jr. is the Cook County Public Defender and is a policy maker for the CCPD with regard to the acts and conduct alleged herein. His actions complained of herein were taken under the color of law and were related to the performance of the duties of his office. He is sued in his official capacity. Gassman seeks no individual recovery against Mitchell. He is named only in his official capacity to effectuate the relief sought herein—the right to display the photograph and to speak publicly about it.

11. Defendant Cook County is a municipality organized under the laws of the State of Illinois. 55 ILCS 5/1-1001 et seq.

**Relevant Facts**

12. Debra has devoted her life to helping poor, indigent people in Cook County. In college, while a Criminal Justice major at University of Illinois at Chicago, she mentored kids at the Cabrini Green Housing Projects. Debra started working for the CCPD as a lawyer on May 27, 1997, and before then was an intern and law clerk with the office.

13. In addition to her duties at work, Debra has demonstrated a deep commitment to future attorneys and those impacted by incarceration or difficult life situations. She has been a guest speaker at law schools, taught legal rights to juvenile inmates in the Juvenile Detention Center and adult inmates at Cook County Jail, and trained others in her office. She has also volunteered--through Lawyers in the Classroom--to teach students about our Constitution. Debra is also a devoted mother who was a foster parent and adopted her child from the Department of Children and Family Services (DCFS).

14. Until the events described below, Debra has never received any type of discipline at CCPD. To the contrary, Debra's evaluations have been excellent--in fact, she is regularly praised by clients, judges, prosecutors, and others in the criminal justice system for her passionate advocacy and professionalism.

**Debra's Israel Connection and Her Heritage:**

15. Debra is a life-long Jewish Chicagoan who is also devoted to Israel. As a law student at the Chicago Kent College of Law and as a young lawyer, she led fundraising efforts for Jewish United Fund (an organization that, among other things, helps feed the hungry in Chicago and supports Israel).

16. Twenty-two years ago, in 2002, Debra volunteered for the Israeli Defense Forces. Debra did this as a time when Israel was anticipating that Iraq would launch nuclear and chemical attacks on Israel and she wanted to assist in the country's protection.

17. During 2005 and 2006, Debra took a leave of absence from work to live in Israel where she studied Hebrew and worked with the "Magav"-- the Jerusalem Border Police. Debra was part of a mission to find terrorists entering Jerusalem with suicide bombs.

**The Photo:**

18. One of Debra's most prized possessions is a photograph of herself smiling while holding a gun in front of an Israeli flag. This Photo was taken in December 2002, in Tel HaShomer, an army base near Tel Aviv, when she volunteered with the Israel Defense Forces. It is reproduced to the right and attached as Exhibit 1. It is approximately 11 inches tall.



19. Debra has displayed the Photo on her CCPD office wall for over two decades. When she returned from Israel in 2002, Debra prominently--and proudly--displayed the Photo in her shared office at the Leighton Criminal Courts Building located at 26th Street and California Avenue. It remained there, without incident, until October 2020, when she transferred to CCPD's Skokie office. At that time, she displayed the Photo in her shared CCPD Skokie office, again without incident.

20. Debra displays the Photo in her office because it holds special meaning to her as a reminder of her time spent defending Israel and the Jewish people. It is a reminder to her that the Jewish people must stay strong when other nations try to wipe them out--as has occurred repeatedly in history, including on October 7.

21. The Photo itself was taken as Israel-- and Debra--were preparing to defend against a chemical attack aimed at murdering Israelis and destroying the entire country. Debra believes the Israeli Defense Forces are important because Israel is the only place in the world that has an army to protect the Jewish people.

22. Until the events described in this Complaint, no one has ever complained that the Photo was distressing or inappropriate or could possibly instigate violence. To the contrary, those who have seen it have commented favorably-- expressing admiration for her experience and volunteering in the Israeli Defense Forces.

**October 7, 2023**

23. Hamas is a terrorist organization that calls for the eradication of the State of Israel. The United States, Australia, Canada, the European Union, Japan, and the UK have all designated Hamas as a terrorist organization. It seeks to kill innocent Jewish people and annihilate Israel.

24. On October 7, 2023 Hamas terrorists infiltrated Israel to murder and kidnap Israelis.

25. Like many in the Jewish community, Debra was devastated, shocked, and scared by the October 7 attacks.

26. The day after, on October 8, Debra welcomed two Israeli strangers into her home. These stranded Israelis were waiting to hear the fate of their families who were in bomb shelters, praying to avoid Hamas's spree of kidnapping, torture, rape, and murder.

**Debra's Return to Work:**

27. On October 10, Debra returned to work at the CCPD. At this time, Israel was counting the dead, looking for survivors, counting how many people were stolen as hostages, and seeking help for sexual assault survivors. It had not even begun a counteroffensive into Gaza to capture the terrorists who perpetrated the massacre.

28. Debra was upset to see that few seemed to care--or even were aware of--the travesty that had occurred in her adopted homeland. She saw CCPD staff doing personal online shopping, clearly oblivious to the mass murders and terrorist attacks happening in our world. She also saw that on the news and social media, there were reports of people celebrating what had turned out to be the worst slaughter of Jews since the Holocaust.

29. When Debra walked into her office and saw the Photo on her office wall, she felt this was an opportunity to share the atrocities taking place at the time by bringing the Photo out of her office and placing it on top of the employee mailboxes for her coworkers to see. She did this to bring attention to the attacks that had occurred in Israel and the need to support the victims at this horrific time. Debra placed the Photo so it was facing the back of the office towards the staff and not visible to members of the public.

30. Other items like holiday decorations, photographs, art, and cards are regularly displayed by CCPD employees in this same area where Debra placed the Photo.

7

31. When the executive management (Rodney Carr and Parle Roe-Taylor) heard about the Photo they instructed the CCPD's Chief to take it down. They told her Skokie supervisors that the Photo was comparable to a Nazi swastika.

32. As instructed, Debra took down the Photo and returned it to her private internal office where she continued to display it. It was not visible to members of the public.

33. A week later, Cook County Public Defender Sharone Mitchell (the top public official at CCPD) issued a written reprimand to Debra concerning the Photo and stating that her display of a photograph that includes a firearm "can be perceived as threatening and therefore is, inconsistent" with the County Public Defender Employee Manual concerning violence in the workplace. The Reprimand is attached as Exhibit 2. The Employee Manual is attached as Exhibit 3. The Cook County Workplace Violence Policy is on page 54 of Exhibit 3.

**Removal of the Photo From *Within* Debra's Office:**

34. On October 30, 2023, Cook County Deputy Public Defender, Parle RoeTaylor went to the CCPD Skokie office. While Debra was in court, Roe-Taylor went into Debra's private office and confiscated Debra's Photo

35. Ms. Roe-Taylor demanded a meeting with Debra and Debra's Chief regarding the Photo. Debra's Chief obtained the Photo and returned it to her but instructed her that it could not be displayed as it had previously been inside of Debra's office. CCPD executive management instructed that the Photo could not be placed where anyone might see it from any angle of the entryway to her office.

36. Debra does not meet with clients in her office. In fact, her office is in the back corner of the Skokie CCPD office where almost no one ever passes.

37. Ms. Roe-Taylor asserted that Debra's display of the Photo in her office constitutes displaying in "public view" a firearm even though this had never been an issue for decades prior to October 7. In any event, the Photo was not in "public view" when it was confiscated by Ms. Roe-Taylor. The CCPD has interpreted "public view" to include the *possibility* that someone might gain entry into the Public Defender's Office, wander around to the back corner, look into Debra's office, and study the certificates, pictures and photos on display.

38. Like most employees, the CCPD generally permits employees to put pictures, displays, and other messages that are important to them inside their office, without censorship.

**The Photo Relates To Matters of Significant Public Concern.**

39. The Photo's core message--that Israel and Jewish people have the right not to be exterminated--is a matter of significant public concern.

40. Many in this world do not believe that Israel has the right to exist. The issue of Israel's right to even defend itself has been divisive. In the City of Chicago, for example, the City Council passed a resolution advocating a cease-fire in Gaza that, if followed, would assure Hamas would attack Israel again, keep the hostages, and never be held liable for the rapes, murders, and other atrocities it committed. This issue was so divisive that Chicago's mayor had to cast the tiebreaking 23-23 vote.

41. Likewise, there are also regular protests throughout Chicago over the right of Israel to defend itself and the Pew Research Center has found that Americans are deeply divided about this issue.[1]

---

[1] https://www.pewresearch.org/politics/2023/12/08/americans-views-of-the-israel-hamas-war/

**CCPD Used Its Workplace Violence Policy as A Pretextual Reason For Requiring Debra To Remove The Photo.**

42. CCPD management was not suddenly or genuinely concerned about the Photo causing violence in the workplace. The Photo had, after all, hung on Debra's office wall for nearly a quarter of a century without incident.

43. Upon information and belief, CCPD has not regulated other employee displays in their own private offices.

44. In reality, CCPD is not concerned about the displays of weapons in the office. In fact, CCPD has permitted other employees to have *actual* weapons in their offices (including guns and swords).

45. While CCPD allows actual weapons in the office, Debra is not aware of any other CCPD employee ever being restricted from displaying a *photograph* of weapon. Other CCPD personnel have been permitted to display gun photos that did not include a picture of an Israeli flag.

46. For example, a senior supervisor of public defenders sent out an email to approximately twenty other public defenders that included as a (bad) joke "we all know what can happen when there is a difference of opinion" –and referenced an attachment to a picture of "walter and smokey" that depicted this photo:



10

47. CCPD employees also sometimes congratulate each other when they have a favorable verdict by placing congratulatory posts in the CCPD office. These sometimes include weapons -- like the one to the right -- displaying a gun photograph.



48. CCPD management likewise was well-aware that Debra would never advocate violence. Debra is a peaceful, caring person who has promoted peace in disputes—both in and out of court.

49. Debra's First Amendment right to express herself has been chilled by CCPD's censorship of her right to express herself though the Photo. Debra's only reasonable choice is to hide the Photo in the corner of her office, or remove it entirely, to avoid having it confiscated again.

50. Debra is unable to prominently display the Photo as she has for most of her career because (a) it would be confiscated, (b) she received a written warning (despite never having been disciplined previously) that has tarnished her exemplary work record, and (c) she fears that if she displays the Photo, CCPD will terminate her which means she would lose (i) her ability to continue her important life's work of defending indigent people and (ii) lose her ability to support her family.

**CCPD Prohibits Employees From Speaking To the Media About Its Policies**

51. CCPD has in full force and effect an Employee Manual (Exhibit 3). This Manuel establishes rules governing Public Relations/Media (Ex. 3, p. 65) and Social Media (Ex. 3, pp.

11

67-68).

52. CCPD prohibits its public defenders, like Debra, from speaking to the media regarding policies, procedures, or "general matters".

53. For example, the Manuel mandates that: "No employee should *initiate* contact with the media or hold a press conference regarding policies, procedures, or the Office's position on general matters, or regarding a particular case." (Ex. 3, p. 65, §II B.; emphasis in original)

54. It also mandates that: "Only the Public Defender or designee may speak to the media about the Law Office's policies, procedures or official positions on general matters." (Ex. 3, p. 65, §II A.)

55. The Employee Manual is impermissibly vague because it does not adequately inform employees what topics they can discuss with the media. For example, what constitutes CCPD's position on "general matters" is impermissibly broad and vague.

56. The Social Media Policy (Exhibit 3. p. 68, § II E 4) impermissibly mandates that employees be "respectful" and "before sharing" on social media obtain the consent of any people or organizations identified.

57. Debra desires to speak to the media regarding the CCPD policies, procedures, and other "general matters". This includes, but is not limited to, CCPD's utilization of its internal policies to prohibit her from displaying the Photo.

58. The Employee Manual serves as a prior restraint on speech, in part, because it states that "Failure to comply with any policy may subject the employee to discipline up to and including termination of employment." (Exhibit 3, p. 1)

59. Defendants knew, or should have been aware, that restricting public employees from speaking to the media is unlawful as the case law is well-established in this regard. *See e.g., Harman v. City of New York*, 140 F.3d 111, 119–20 (2d Cir. 1998)(restriction on contracting media regarding "policies or activities" of state agency violates First Amendment); *Moonin v. Tice*, 868 F.3d 853, 867 (9th Cir. 2017)(prohibiting employees from communicating about a public program violates First Amendment); *Lauretano v. Spada*, 339 F. Supp. 2d 391, 420 (D. Conn. 2004)(where police "media policy does not limit its application to instances where the employee speaks as an official spokesperson or representative", the policy is "unconstitutional and unjustified."); *Price v. Saugerties Cent. Sch. Dist.*, 105CV0465LEKDRH, 2006 WL 314458, at *4 (N.D.N.Y. Feb. 9, 2006)(policy restricting communications on "school matters" could include matters of public concern and therefore violates the First Amendment).

## CAUSES OF ACTION

### COUNT I
### FIRST AMENDMENT VIOLATION (U.S. Const. amend. I, amend. XIV; 42 U.S.C. § 1983; Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202)

60. Plaintiff repeats and re-alleges Paragraphs 1 through 59 above as if fully set forth herein.

61. Plaintiff's First Amendment Rights were violated in, *inter alia,* the following manner: (a) when the CCPD required Plaintiff to remove the Photo from above the mailbox (b) when CCPD confiscated the Photo from within her office and then prohibited her from prominently displaying it going forward.

13

62. The CCPD Employee Manual violates the First Amendment in that, *inter alia,* it constitutes a prior restraint, is impermissibly broad and vague, and restricts Debra from speaking publicly.

63. Plaintiff was chilled from speaking out and publicly expressing herself on matters of public concern in violation of her First and Fourteenth Amendment rights. As a result, she was damaged.

## COUNT II
### (Indemnification – County of Cook)

64. Plaintiff repeats and re-alleges Paragraphs 1 through 63 above as if fully set forth herein.

65. Defendant Cook County has a duty to indemnify each of the Law Office of the Public Defender against any damages, including attorney's fees, recovered by plaintiff by judgment or settlement.

Plaintiff respectfully requests that this Court grant the following relief:

A. Declare that CCPD's conduct is unlawful and in violation of her First and Fourteenth Amendment rights;

B. Issue an order permitting Debra to prominently display the Photo in her office;

C. Order Cook County liable through indemnification for all damages alleged herein;

D. Award Plaintiff her attorney's fees and costs;

E. Grant such other relief as this Court may deem just and proper including all relief available to Plaintiff under the law.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

14

Dated: 2/14/2024	Respectfully submitted,
**Debra Gassman**

By: /s/ David Fish
      One of Plaintiff's Attorneys

David J. Fish
Fish Potter Bolaños, P.C.
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
(312) 818-2407 (Telephone)
admin@fishlawfirm.com
www.fishlawfirm.com

15