# EXHIBIT 3



# EMPLOYEE MANUAL

## 2016

Amy P. Campanelli
Public Defender

Issued:   10/01/97
Revised: 05/01/98
Revised: 10/17/02
Revised: 05/01/16

## STATEMENT OF PURPOSE OF THE EMPLOYEE  MANUAL

The purpose of this Manual is to provide an overview of employee benefits and operating policies of the Law Office of the Cook County Public Defender (hereinafter referred to as "Law Office ").

**THIS MANUAL, INCLUDING THE ATTORNEY APPENDIX, IS NOT A CONTRACT. THE INFORMATION IS SUBJECT TO CHANGE AT ANY TIME.**

Collective Bargaining Agreements between the County and AFSCME supersede any contrary language contained herein.

This Employee Manual and its appendix supersede all previously issued manuals.

The Law Office reserves the right to revise policies.  Any such revised policies issued by the Law Office will be effective from the date of issue.  Each employee must acknowledge receipt of this Manual and any revisions.

It is the responsibility of each employee to comply with of all Law Office and County policies.  Failure to comply with any policy may subject the employee to discipline up to and including termination of employment.

# T A B L E   O F   C O N T E N T S

**STATEMENT OF PURPOSE OF THE EMPLOYEE MANUAL** . . . . . . . . . . . . . . . . . . . . . . Page i

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page ii

Section 1. **OFFICE STATEMENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 1
  1-1 **Mission Statement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 1
  1-2 **Value Statement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 2

Section 2. **ORGANIZATION OF THE OFFICE** . . . . . . . . . . . . . . . . . . . . . . . . . . Page 3
  2-1 **Table of Organization** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 3
  2-2 **Overview of the Law Office of the Cook County Public Defender** . . . . . . . . . . . . . . . Page 4
    2-2-1 **Positions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4
    2-2-2 **Operations and Divisions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 6

Section 3. **FAIR EMPLOYMENT PRACTICES** . . . . . . . . . . . . . . . . . . . . . . . . . . Page 10
  3-1 **Equal Employment Opportunity Statement** . . . . . . . . . . . . . . . . . . . . . . . Page 10
  3-2 **Equal Employment Opportunity Policy and Procedures** . . . . . . . . . . . . . . . . . Page 11
  3-3 **Sexual Harassment Policy and Procedures** . . . . . . . . . . . . . . . . . . . . . . . . Page 12

Section 4. **PERSONNEL OPERATIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 16
  4-1 **Employee Orientation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 16
  4-2 **Evaluation Policy and Procedures** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 17
  4-3 **Notification of Work-Related Injuries** . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 19
  4-4 **Use of Students and Volunteers** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 20
  4-5 **Resignation Procedures** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 21
  4-6 **Maintenance of Current Employee Information** . . . . . . . . . . . . . . . . . . . . Page 22
    4-6-1 **Duty to Report Address, Phone Numbers, and Emergency Contacts** . . Page 22

Section 5. **EMPLOYEE BENEFITS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 23
  5-1 **Authorized Absences** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 23
    5-1-1 **Bereavement Leave** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 23
    5-1-2 **Disability -- Duty** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 24
    5-1-3 **Disability -- Ordinary** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 25
    5-1-4 **Educational Leave** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 26
    5-1-5 **Family and Medical Leave Act** . . . . . . . . . . . . . . . . . . . . . . . . . . Page 27
    5-1-6 **Family Responsibility Leave** . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 28
    5-1-7 **Jury Duty** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 29
    5-1-8 **Maternity/Paternity Leave** . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 30
    5-1-9 **Military Leave** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 33

5-1-10 **Personal Days** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 32
5-1-11 **Regular/Personal Leave of Absence** . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 33
5-1-12 **Sick Time** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 34
5-1-13 **Union Leave** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 35
5-1-14 **Vacation Leave** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 36
5-1-15 **Leave for Attendance at Veterans' Convention** . . . . . . . . . . . . . . . . Page 37
5-2 **Employee Assistance Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 38
5-3 **Holidays** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 39
5-4 **Insurance Programs** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 40
5-4-1 **Health, Vision and Dental Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . Page 40
5-4-2 **Life Insurance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 41
5-5 **Cook County Pension Fund** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 42

Section 6. **CONDUCT OF EMPLOYEES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 43
6-1 **Ethics** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 43
6-1-1 **Adherence to the Illinois Rules of Professional Responsibility** . . . . . . . . . . . . Page 43
6-1-2 **Adherence to the Cook County Ethics Ordinance** . . . . . . . . . . . . . . . . . Page 44
6-1-3 **Duty to Report Unethical Behavior** . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 45
6-1-4 **Security and Confidentiality** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 46
6-1-5 **Referrals of Cases to Private Attorneys** . . . . . . . . . . . . . . . . . . . . . . . . Page 47
6-2 **Behavior** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 48
6-2-1 **Visitors in the Workplace** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 48
6-2-2 **Secondary Employment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 49
6-2-3 **Attire Policy** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 50
6-2-4 **Unauthorized and Excessive Absences** . . . . . . . . . . . . . . . . . . . . . . . . Page 51
6-2-5 **Electioneering** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 53
6-2-6 **Adherence to Cook County Violence in the Workplace Policies** . . . . . . . . . . . Page 54
6-2-7 **Orders of Protection** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 55
6-2-8 **Use of Law Office Resources** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 56
6-2-9 **Duty to Report Arrests** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 58
6-2-10 **False Complaints** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 59
6-2-11 **Work Location Change** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 60
6-2-12 **ARDC Complaint Inquiry** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 61
6-2-13 **Attorney Registration** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 62
6-3 **Public Relations** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 63
6-3-1 **Participation at Outside Events** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 63

      6-3-2 **Media** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 65

      6-3-3 **Social Media** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 67

Section 7. **OFFICE ADMINISTRATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 70

  7-1 **Technology** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 70

      7-1-1 **Employee-Owned Computers in the Workplace** . . . . . . . . . . . . . . . Page 70

      7-1-2 **Personal Use of Computer Hardware/Software** . . . . . . . . . . . . . . . . . Page 72

      7-1-3 **Cook County Software Policy** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 73

      7-1-4 **Computer Usage** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 74

      7-1-5 **Use of Electronic Communications Systems** . . . . . . . . . . . . . . . . . . . Page 75

  7-2 **Legal Research** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 77

      7-2-1 **LEXIS Use Policy** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 77

      7-2-2 **LEXIS Use Rules** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 77

  7-3 **Law Office Space and Equipment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 80

      7-3-1 **Conference Room Reservation Procedures** . . . . . . . . . . . . . . . . . . . . Page 80

  7-4 **Payroll Procedures** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 82

      7-4-1 **Payroll and Time Sheet Practices** . . . . . . . . . . . . . . . . . . . . . . . . . . Page 81

      7-4-2 **Check Issuance Procedure** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 82

  7-5 **Vehicle Use** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 83

      7-5-1 **County Vehicle Use Policy and Procedure** . . . . . . . . . . . . . . . . . . . . Page 83


Section 8. **TRAINING** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 86

  8-1 **Employee Training** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 86


Section 9. **CASE MANAGEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 87

  9-1 **Expert Witness Requests** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 87

  9-2 **File Maintenance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 89

      9-2-1 **Criminal, Juvenile and Civil File Maintenance Standards** . . . . . . . . Page 89

      9-2-2 **Disposal of Closed Case Files** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 91

      9-2-3 **Guidelines for Warehouse File Retrieval** . . . . . . . . . . . . . . . . . . . . . Page 93

  9-3 **Request for an Office Interpreter** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 94

  9-4 **Notice of Appeal Procedures** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 95

  9-5 **Holiday Court** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 97

  9-6 **Conflict of Interest (Trial)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 98

  9-7 **Unauthorized Appointment of the Public Defender - - Special Situations** . . . . . . . . . Page 99

  9-8 **HIV/AIDS Confidentiality** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 101

  9-9 **Representation of Contempt Clients** . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 103

  9-10 **State-Issued Protective Orders Affecting Discovery** . . . . . . . . . . . . . . . . . . . . . Page 104

Section 10.  **MISCELLANEOUS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 105

10-1 **Compensatory Time** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 105

10-2 **County of Cook Regulations**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 106

| | |
|---|---|
| Issued: | |
| Revised: | 10/1/97 |
| Revised: | 8/20/98 |
| Revised: | 05/01/16 |

Section 1. **OFFICE STATEMENTS**

1-1 **Mission Statement**

Our Mission is to protect the rights, liberties, and dignity of each person whose case has been entrusted to us by providing the finest legal representation.

Issued:    08/20/98
Revised   08/12/11
Revised:  05/01/16

Section 1.  **OFFICE STATEMENTS**

1-2    **Value Statement**

We value our office which is dedicated to excellent advocacy and client service.  Our work force is diverse, experienced, and knowledgeable.  Strengthened by camaraderie and mutual support, we display courage and independence in carrying out our mission.

1-2    **Belief Statement**

We believe that our law office is the best defender office in the country.  Ever striving for excellence, we vigorously pursue the necessary and noble tasks of protecting the rights of our clients.

1-3    **Vision Statement**

We intend for our office to maximize the potential of all employees, to treat every worker with dignity, to acquire state-of-the-art technology, and to cultivate a public image that reflects our considerable talent and expertise.

Issued: _____
Revised: 10/01/97
Revised: 10/17/02
Revised: 05/01/16

<u>Section 2.</u>  **ORGANIZATION  OF THE OFFICE**

2-1  **Table of Organization** _____



Issued:    08/12/11
Revised:  05/01/16

## Section 2.  ORGANIZATION OF THE OFFICE

**2-2      Overview of the Law Office of the Cook County Public Defender**
**2-2-1   Positions**

### First Assistant Public Defender
The First Assistant oversees operations related to the Suburban Operations, Central Operations, Countywide Operations, Conflict and Support Operations, and Investigations.  The First Assistant acts as Acting Public Defender as requested by the Public Defender.  The First Assistant acts as liaison to the Cook County Board and its commissioners.

### Chief of Staff
The Chief of Staff oversees operations related to Administrative Operations, Financial Operations, Community and Media Relations, Employment Matters and Civil Litigation, Labor Relations, and Professional Development.  The Chief of Staff is liaison to the State's Attorney's Office, Independent Inspector General, and the Shakman Compliance Officer.  The Chief of Staff acts in the Public Defender's stead as requested by the Public Defender.

### Deputy of Financial Operations
The Deputy of Financial Operations is the Chief Financial Officer of the Law Office.  The Deputy oversees Payroll, Accounts Payable and the Grants Development Unit.  The Deputy is responsible for preparation, presentation and oversight of the Office's budget. The Deputy is liaison to the County Board and Finance Committee, and County Bureau of Finance.  The Grants Development Unit is responsible for coordinating with internal and external agencies to secure and manage grant funding.

### Deputy of Administrative Operations
The Deputy of Administrative Operations directs, coordinates, and oversees the activities of Administrative Support, Human Resources, and Recordkeeping and Case File Management. The Deputy provides support and resolutions for employee conflicts, contract and policy interpretations, disciplinary problems, grievances, unfair labor practices, and contract negotiations.

### Deputy of Labor
The Deputy oversees human resources and labor relations activities, including contract negotiations, discipline, grievances and promotions.

### Deputy of Community and Media Relations
The Deputy directly works and communicates with community organizations.

**Deputy of Employment Matters**

The Deputy provides advice regarding employment matters and oversees complaints and charges filed with various governmental agencies by employees and clients. The Deputy also responds to FOIA requests and subpoenas for depositions and documents in civil actions.

**Deputy of the Suburban Operations**

The Deputy coordinates and oversees the Chiefs and supervisors in Districts 2 through 6.

**Deputy of the Central Operations**

The Deputy oversees the operations of the Felony Trial Division, Homicide Task Force, First Municipal Division, Investigations, and the Mitigation Specialists.

**Deputy of the Countywide Operations**

The Deputy oversees the operations of the Juvenile Justice Division, the Civil Division, and the Multiple Defendant Division.

**Deputy of Conflict and Support Operations**

The Deputy oversees the operations of the Legal Resources Division, Forensic Science Division, Trial Technology Division, and Child Protection Conflicts Division.

**Chief of Investigations**

The Chief of Investigations oversees the Investigation Division and reports directly to the First Assistant.

Issued: _____
Revised: 10/01/97
Revised: 10/17/02
Revised: 08/12/11
Revised: 05/01/16

Section 2. **ORGANIZATION OF THE OFFICE**

**2-2 Overview of the Law Office of the Cook County Public Defender** _____
**2-2-2 Operations and Divisions** _____

## CENTRAL OPERATIONS

**Felony Trial Division**
Attorneys in the Felony Trial Division handle cases heard in the thirty felony trial courtrooms, three preliminary hearing courtrooms, and the central bond court located at 26th and California in Chicago. The attorneys represent clients charged in felony informations and/or indictments with offenses arising out of crimes taking place primarily within Chicago.

**Homicide Task Force**
Attorneys in Homicide Task Force represent clients charged with committing homicide offenses in Chicago and as needed in suburban locations. Attorneys from this unit, in most cases, vertically represent clients from the beginning of their case through final disposition.

**First Municipal District (Chicago)**
Attorneys in the First Municipal District represent clients at trial charged with misdemeanors, including major traffic and domestic violence offenses. In addition, they represent defendants charged with felonies at the preliminary hearing stage of a case. The courtrooms are located throughout Chicago.

**Mitigation**
The mitigation unit consists of case workers and sentencing advocates who develop detailed psychosocial biographies of adult and juvenile clients who face incarceration sentences or dispositions. Mitigation evidence is used to persuade courts that our clients should receive less severe sentences, alternatives to incarceration, or alternative dispositions.

## SUBURBAN OPERATIONS

**Second Municipal District (Skokie)**
Attorneys in the Second District represent clients charged with felonies (including homicides), misdemeanors and major traffic offenses. These cases arise from incidents occurring in Des Plaines, Evanston, Glencoe, Glenview, Golf, Kenilworth, Lincolnwood, Morton Grove, Niles, Northbrook, Northfield, Park Ridge, Skokie, Wilmette and Winnetka. Additionally, the attorneys in Skokie staff courtrooms from the Criminal Division of the Circuit Court, where they represent clients charged with felonies originating in the City of Chicago.

**Third Municipal District (Rolling Meadows)**

Attorneys in the Third District represent clients charged with felonies (including homicides), misdemeanors and major traffic offenses.  These cases arise from incidents occurring in Arlington Heights, Barrington, Barrington Hills, Bartlett, Bensenville, Buffalo Grove, Dundee, East Dundee, Elgin, Elk Grove Village, Hanover Park, Harwood Heights, Hoffman Estates, Mount Prospect, Norridge, Palatine, Prospect Heights, Rolling Meadows, Roselle, Rosemont, Schaumburg, South Barrington, Streamwood and Wheeling.

**Fourth Municipal District (Maywood)**

Attorneys in the Fourth District represent clients charged with felonies (including homicides), misdemeanors and major traffic offenses. These cases arise from incidents occurring in Bellwood, Berkeley, Berwyn, Broadview, Brookfield, Cicero, Elmwood Park, Park Forest, Franklin Park, Hillside, Hines, LaGrange Park, Maywood, Melrose Park, Memorial Park, Northlake, North Riverside, Oak Park, River Forest, River Grove, Riverside, Schiller Park, Stone Park, Triton College, Veterans Park and Westchester.

**Fifth Municipal District (Bridgeview)**

Attorneys in the Fifth District represent clients charged with felonies (including homicides), misdemeanors and major traffic offenses. These cases arise from incidents occurring in Alsip, Bedford Park, Bridgeview, Burbank, Burr Ridge, Chicago Ridge, Countryside, Evergreen Park, Forest View, Hickory Hills, Hinsdale, Hodgkins, Hometown, Indian Head Park, Justice, LaGrange, Lemont, Lyons, McCook, Merrionette Park, Oak Lawn, Orland Hills, Orland Park, Palos Heights, Palos Hills, Stickney, Summit, Western Springs, Willow Springs and Worth. Additionally, attorneys in Bridgeview staff courtrooms from the Criminal Division of the Circuit Court, where they represent clients charged with felonies originating in Chicago.

**Sixth Municipal District (Markham)**

Attorneys in the Sixth District represent adult clients charged with felonies (including homicides), misdemeanors, and major traffic offenses, and juvenile clients charged with delinquency petitions. These cases arise from incidents occurring in Blue Island, Burnham, Calumet City, Calumet Park, Chicago Heights, Country Club Hills, Crestwood, Crete, Dixmoor, Dolton, East Hazel Crest, Flossmoor, Ford Heights, Glenwood, Harvey, Hazel Crest, Homewood, Lansing, Lynwood, Markham, Matteson, Midlothian, Oak Forest, Olympia Fields, Park Forest, Phoenix, Posen, Richton Park, Riverdale, Robbins, Sauk Village, South Chicago Heights, South Holland, Steger, Thornton and Tinley Park.

**Specialty Courts**

Specialty or therapeutic courts exist as alternatives to the traditional criminal justice process. Focusing on vulnerable populations – such as persons with substance abuse problems, sex workers, those with mental health issues, etc. – entry into specialty courts has the goal of diverting individuals into treatment, counseling, and help with escaping the cycle that led to their arrest. These diversion programs are problem-solving courts and have the potential to lead thousands away from incarceration and a criminal record.

## COUNTYWIDE OPERATIONS

**Multiple Defendant Division (MDD)**
Attorneys represent clients charged with felony cases, where a case has more than one defendant. Because of the confidential nature of the work, the division is self-contained and has no operational interaction with other divisions of the Law Office.

**Civil Division**
Attorneys in the Civil Division represent parents and guardians in Child Protection Proceedings where there are allegations of child abuse, neglect and/or dependency and where the State seeks to terminate parental rights. Attorneys in the Civil Division also handle conflict cases in Mental Health Court where the State seeks to commit a respondent involuntarily to a mental health facility and/or have psychotropic medication involuntarily administered.

**Juvenile Justice Division**
Attorneys in the Juvenile Justice Division represent minors under the age of 18 at the time of offense accused in delinquency petitions of committing crimes ranging from misdemeanors to first degree murder. Additionally, attorneys in this division represent minors when the State is seeking to have certain felony cases transferred to adult court.

## CONFLICT AND SUPPORT OPERATIONS

**Legal Resources Division**
Attorneys in the Legal Resources Division (LRD) represent clients in post-trial matters - appeals, post-conviction petitions, and motions to vacate guilty pleas. Attorneys also work to enhance the representation provided in the various trial divisions of the Law Office by providing legal research, training, and litigation assistance.

**Child Protection Conflict Division**
The attorneys in the Civil Protection Conflicts Division represent parents and guardians in Child Protection Proceedings where there are allegations of child abuse, neglect and/or dependency and there is a conflict of interest between one of more of the parents and/or guardians. Because of the confidential nature of the work, the unit is self-contained and has no operational interaction with the Civil Division of the Law Office.

**Forensic Science Division**
Attorneys in the Forensic Science Division (FSD) assist in the representation of clients with cases involving any forensic evidence, such as DNA analysis, fingerprints, firearms and trace evidence. Attorneys also work to enhance the representation provided in the various trial divisions of the Law Office by offering forensic training and case review.

**Trial Technology**
Trial Technology is responsible for all matters relating to technology (hardware, software and trial presentation implementation) for all staff. This Division also works to enhance the representation provided in the various trial divisions of the Law Office by providing training and support for trial presentations.

## FINANCIAL OPERATIONS

### Accounts Payable
The Accounts Payable Division is responsible for the payment and computerized tracking of all Law Office expenditures. In addition, this unit is responsible for requisitioning all purchases, including capital equipment items.

### Payroll
This division provides salary checks every two weeks for the entire staff at the Law Office. Support staff also tracks employees' sick, vacation and personal days accrued, deferred compensation, pension, federal withholding tax, state tax, bonds, charitable contributions, universal life coverage, union fees, medical tax and hospital insurance. They coordinate efforts with the Cook County Comptroller's Office.

### Grant Manager
The grant manager works with federal, state and local organizations as well as coordinates with the Department of Budget and Management Services and internal office staff to secure grant funding that supports the vision of the Law Office. In addition, the grant manager manages all administrative functions of grants awarded to the Law Office.

## ADMINISTRATIVE OPERATIONS

### Personnel
The hiring, recruitment, and promotion and transfer process is managed by this division. The division maintains all employee personnel records, leave of absences processes, and employee work histories at one centralized location. New employee orientations are conducted and administered by Personnel staff to inform new employees regarding benefits, structure, and policy.

### Support Staff
The administrative staff is comprised of employees who handle various facets of support services to assist the attorneys in providing the best representation for clients. The group is comprised of Interpreters, Secretaries, Clerks, Administrative Assistants, Accountants, Caseworkers, Attorney Readers, Sentencing Advocates, and Administrative Supervisors.

## INVESTIGATION OPERATIONS
Investigators work in unison with attorneys from all divisions throughout the Law Office in preparing cases for trial. Investigators carry out such essential tasks as serving subpoenas; locating, interviewing and transporting witnesses; taking photographs; preparing diagrams for court presentations; and as required, testifying in court. Investigators are assigned throughout Chicago and the suburbs.

## PROFESSIONAL DEVELOPMENT DIVISION
The Professional Development Division (PDD) is responsible for informing, developing and organizing career training programs for all staff. PDD provides new attorney training, in-house seminars, and the opportunity to participate in nationally recognized trial skills programs locally and across the country. PDD also offers programs to support staff, investigators and management to improve job performance and to promote communication skills.

Issued: _____
Revised: 10/01/97
Revised: 10/17/02
Revised: 08/12/11
Revised: 05/01/16

Section 3. **FAIR EMPLOYMENT PRACTICES**

3-1 **Equal Employment Opportunity Statement**

The Law Office  is committed to recruiting and selecting employees based on demonstrated and potential ability to perform with the highest degree of skill and judgment, without regard to race, color, sex, age, religion, disability, national origin, ancestry, sexual orientation, marital status, parental status, military discharge status, source of income, housing status, the presence of non-job related medical condition or handicap, political affiliation and/or beliefs, or activity or non-activity on behalf of the pertinent union.

Issued: _____
Revised  10/01/97
Revised: 08/12/11
Revised: 05/01/16

## Section 3. **FAIR EMPLOYMENT PRACTICES**

### 3-2 **Equal Employment Opportunity Policy and Procedures**

I.      No employee shall be discriminated against on the basis of race, color, sex, age, religion, disability, national origin, ancestry, sexual orientation, marital status, parental status, military discharge status, source of income, housing status, political affiliation and/or beliefs, or activity or non-activity on behalf of a union.

II.     Any complaints arising from violations of this policy shall be handled in accordance with applicable Federal and Illinois laws, the Cook County Human Rights Ordinance and with the provisions of the pertinent collective bargaining agreement and shall be promptly reported to the immediate supervisor.

| | |
|---|---|
| Issued: | |
| Revised: | 10/01/97 |
| Revised: | 03/01/99 |
| Revised: | 08/12/11 |
| Revised: | x x/xx/xx |

Section 3. **FAIR EMPLOYMENT PRACTICES**

**3-3  Sexual Harassment Policy and Procedures** _____

I.      Statement of Purpose

The Law Office is committed to maintaining a work environment that encourages and fosters appropriate conduct among employees and respect for individual values and sensibilities. Accordingly, the Law Office intends to enforce its Sexual Harassment Policy at all levels within the work place in order to create an environment free from discrimination of any kind, including sexual harassment.

Sexual harassment, according to the Equal Employment Opportunity Commission, the Illinois Department of Human Rights, and the Cook County Commission on Human Rights, and for purposes of this Policy, includes unwelcome sexual advances, requests for sexual favors, other verbal, non-verbal or physical acts of a sexual or sex-based nature.

Sexual harassment can occur between men and women or between members of the same gender. This behavior is unacceptable in the work place itself and in other work-related settings such as business trips, court appearances and business-related social events.

It is also unlawful to retaliate in any way against anyone who has complained about sexual harassment or discrimination, whether that concern relates to harassment of or discrimination against the individual raising the concern or against another individual.

Sexual harassment affects the victim and other employees as well. Each incident of harassment contributes to a general atmosphere in which everyone suffers the consequences. Sexually-oriented acts or sex-based remarks or conduct have no legitimate business purpose. Where such conduct is directed by a supervisor (or someone in a management position) toward a subordinate, the former will be held to a higher standard of accountability because of the degree of control and influence he or she has or is perceived to have over the employment conditions and benefits of the subordinate.

II.        Prohibited Conduct

Prohibited acts of sexual harassment can take a variety of forms ranging from subtle pressure for sexual activity or contact to physical contact. At times, the offender may be unaware that his or her conduct is offensive or harassing to others. Examples of conduct which could be considered  sexual harassment include, but are not limited to:

A.        Persistent or repeated unwelcome flirting, pressure for dates, sexual comments or touching;

B.        Sexually suggestive jokes, gestures or sounds directed toward another or sexually oriented or degrading comments about another;

C.        Preferential treatment of an employee, or a promise of preferential treatment to an employee, in exchange for dates or sexual conduct;

D.        The denial, or threat of denial, of employment, benefits or advancement for refusal to consent to sexual advances;

E.        The open display of sexually oriented pictures, posters or other sexually-oriented material offensive to others;

F.        Retaliation against an individual for reporting or complaining about sexually harassing conduct.

III.    Individuals Covered Under the Policy

This Policy covers all employees. The Law Office will not tolerate, condone or allow sexual harassment, whether engaged in by co-workers, supervisors, or by outside clients, opposing counsel, court personnel or other non-employees who conduct business with the Law Office. The Law Office supports and encourages reporting of all incidents of sexual harassment, regardless of who the offender may be, and will promptly investigate all reported incidents. Where the alleged offender is not an employee, Law Office's management, in consultation with the complainant, will review the complaint and make every effort to identify a reasonable remedy if sexual harassment has been confirmed

IV.     Complaint Process

While the Law Office encourages individuals who believe they are being harassed to firmly and promptly notify the offender that his or her behavior is unwelcome, the Law Office also recognizes that power and status disparities between an alleged harasser and a target may make such a confrontation impossible. In the event that such informal, direct communication between individuals is either ineffective or impossible, or even when such communication has occurred, the following steps should be taken to report a sexual harassment complaint:

A.      Reporting of Incident: All employees are urged to report immediately any suspected sexual harassment. Such report should be made to any member of management. The report can be made, initially, either orally or in writing, but reports made orally must be reduced to writing by the complainant or within five (5) working days by the management personnel receiving the oral report before an investigation can be initiated and a resolution achieved. The complaint can also be reported to the Cook County Commission on Human Rights at (312) 603-1100.

B.      Investigation of Complaint: Once a complaint has been reduced to writing, it shall be sent to the First Assistant Public Defender or to the Public Defender, as appropriate. The Law Office will initiate an investigation of the suspected sexual harassment within five (5) business days of notification. The investigation will include an interview with the employee(s) who made the initial report, the person(s) towards whom the suspected harassment was directed and the individual(s) accused of the harassment. Any other person who may have information regarding the alleged sexual harassment may also be interviewed. All investigations will be completed within a reasonable time.

C.      Report: The person responsible for investigating the complaint shall prepare a written report to the Public Defender or designee within ten (10) business days of the completion of the investigation of the suspected harassment unless extenuating circumstances prevent him/her from doing so. The report shall include a finding that sexual harassment occurred, sexual harassment did not occur, or there is inconclusive evidence as to whether sexual harassment occurred. A copy of the finding will be given to the employee(s) to whom the suspected harassment was directed and to the individual(s) accused of the harassment.

D.    Records; Confidentiality: Employees who report incidents of sexual harassment are encouraged to keep written notes in order to accurately record the offensive conduct. To the extent possible, every effort shall be made to keep confidential all matters related to the investigation. In the event of a lawsuit, however, the records maintained by the Law Office and the complainant may not be considered privileged from disclosure. Written records will be maintained for five years from the date of the resolution unless new circumstances dictate that the file should be kept for a longer period of time.

E.    Timeframe for Reporting Complaint: The Law Office encourages a prompt reporting of complaints so that rapid response and appropriate action may be taken. However, due to the sensitivity of these problems and because of the emotional toll such misconduct may have on the individual, no shorter timeframe will be instituted for reporting sexual harassment complaints than any imposed by the County. Delayed reporting of complaints will not, in and of itself, preclude the Law Office from taking remedial or disciplinary action.

F.    Protection Against Retaliation: The Law Office will not, in any way, retaliate against an individual who makes a report of sexual harassment nor permit employees to do so. Retaliation is a serious violation of this sexual harassment policy and should be reported immediately. Any person found to have retaliated against another individual for reporting sexual harassment will be subject to the same disciplinary action provided for sexual harassment offenders.

V.    Discipline/Sanctions

Disciplinary action will be taken against any employee found to have engaged in sexual harassment within the workplace or while conducting Law Office business. The Law Office has the right to apply any sanction or combination of sanctions, up to and including termination, to deal with unreasonable conduct or discrimination.

Where a hostile work environment has been found to exist, the Law Office will take all reasonable steps to eliminate the conduct creating such an environment.

Issued: _____
Revised: 10/01/97
Revised: 08/12/11
Revised: 05/01/16

<u>Section 4.</u>  **PERSONNEL OPERATIONS**

**4-1  Employee Orientation** _____

All new employees are required to attend employee orientation which is scheduled soon after employment commences. During this orientation, employees are required to complete the necessary payroll and employment documents.

All employees shall receive a digital copy of this Employee Manual.

Issued: _____
Revised: 10/01/97
Revised: 11/15/99
Revised: 09/16/03
Revised: 08/12/11
Revised: 05/01/16

Section 4.  **PERSONNEL OPERATIONS**

**4-2  Evaluation Policy and Procedures**

I.      Purpose

In order to maintain the highest level of client service, every employee of the Law Office shall periodically receive fair and impartial performance evaluations. The goal of this evaluation process is to enable the Law Office to monitor its effectiveness in delivering client services; to communicate its standards of professionalism and expected performance; to improve staff performance and productivity; and to measure the quality of its training efforts.

II.     Procedures

A.    At the end of a performance cycle every employee shall be evaluated with respect to job performance. Additional performance evaluations may be prepared throughout the performance cycle when deemed appropriate by the employee's supervisor.

B.    Performance evaluations are based on standards and objectives. These standards and objectives include areas of focus considered as essential to employee performance. These standards and objectives shall be contained in a performance evaluation form and shall be used consistently among the same job classifications.

C.    Every employee will have the opportunity to comment regarding his/her performance review.

D.    Performance evaluations shall be prepared by the employee's current supervisor; however, all supervisors to whom an employee was assigned during a performance cycle, shall provide input into the evaluation.

E.    Performance evaluation may include expectations for continued professional development of the individual employee. During the course of the performance cycle, each employee will be expected to engage in professional development to meet these expectations.

F.      After the supervisor has reviewed the performance evaluation with the employee, and the employee has had an opportunity to respond, the evaluation shall be sent to the Personnel Department.

III.    Performance Cycles

A.      Probationary Employees - Every probationary employee shall be evaluated prior to the end of the probationary period.

B.      Non-probationary Employees - All non-probationary employees shall receive an annual written evaluation unless otherwise indicated.

IV.     Performance Improvement Plan

A.      If a performance evaluation indicates that performance deficiencies exist, the supervisor will prepare a Performance Improvement Plan for that employee.

B.      The Performance Improvement Plan will be in writing and include:

1.  A statement of performance deficiencies;
2.  A statement of what the employee needs to do to bring performance to an acceptable level;
3.   What the supervisor will do to assist the employee;
4.  Detail of any training needed;
5.  The length of the Performance Improvement Plan period;
6.  The signature of the employee, supervisor and/or chief.

C.      Following the completion of the Performance Improvement Plan period, the employee will receive a new evaluation covering the period of the Performance Improvement Plan.

Issued: _____
Revised: 10/01/97
Revised: 10/17/02
Revised: 08/12/11
Revised: 05/01/16

Section 4.  **PERSONNEL OPERATIONS**

4-3  **Notification of Work-Related Injuries**

Cook County's Department of Risk Management requires notification of all employee injuries within twenty-four (24) hours.  Complete notification of injury shall include a Cook County Initial Notification of Employee Accident or Injury card, Employee's Accident Report form, Supervisor's Investigation Report, Witness Statement Report and Authorization to Release Medical Records. [These forms are available from supervisors and the Personnel Division.]

If there is going to be a delay in compiling all forms to meet the twenty-four (24) hour deadline, the Initial Notification of Injury card should be forwarded to the Department of Risk Management immediately.  The remaining documentation of injury should be provided within seventy-two (72) hours.

The immediate supervisor shall notify the Personnel Division of the work-related injury and shall forward the Initial Notification of Injury card to the Department of Risk Management with a copy to the Personnel Division.  The supervisor shall ensure the other required County forms are filled out within the time frames required and shall compile and forward them to the Personnel Division.

Issued: _____
Revised: 10/01/97
Revised: 10/17/02
Revised: 08/12/11
Revised: 05/01/16

Section 4. **PERSONNEL OPERATIONS**

4-4  **Use of Student  Volunteers**

The Law Office has an ongoing student volunteer program.  Students should apply through Cook County's Taleo on-line application system:
https://cookcountyil.taleo.net/careersection/900/jobsearch.ftl?lang=en&portal=66100020956

Issued: _____
Revised: 10/01/97
Revised: 08/12/11
Revised: 05/01/16

Section 4. **PERSONNEL OPERATIONS**

**4-5  Resignation Procedures** _____

I.      All employees of the Law Office intending to terminate employment are required to provide proper notification of their intent to resign.

II.     Proper procedure is to:

    A.      Prepare a letter of resignation directed to the Public Defender;

    B.      Send copies of the letter to immediate supervisor and/or chief, and to the Human Resources Specialist prior to the official date of resignation.

III.    Exit interviews are scheduled by the Personnel Division.  At the exit interview, the employee shall be informed regarding rights and benefits and given all related paperwork.  The employee must turn over his/her ID to the Personnel Division at the exit interview.  All other County property must be returned to the immediate supervisor or chief.

    County property includes, keys, files, pagers, County and Law Office identification cards, electronic equipment, credit cards,  Law Office credentials, Employee Policy Manuals, books, portable telephones, etc.

Issued:    09/12/03
Revised: 08/12/11
Revised: 05/01/16

Section 4. **PERSONNEL OPERATIONS**

**4-6 Maintenance of Current Employee Information** _____
**4-6-1 Duty to Report Address, Phone Numbers, and Emergency Contacts** _____


As needed, each employee shall provide to his/her supervisor/chief current information concerning his/her residence address and phone number, as well as the name, address and phone number(s) of a person, who should be contacted in case of an emergency.

Employees are under a duty to keep this information current.

Issued: _____
Revised: 10/01/97
Revised: 08/12/11
Revised: 05/01/16

## Section 5.  EMPLOYEE BENEFITS

5-1  **Authorized Absences** _____
5-1-1  **Bereavement Leave** _____

Excused leave with pay will be granted to an employee for attendance at the funeral of a member of the employee's family or household.  See applicable Collective Bargaining Agreements or County rule.

An employee may request bereavement leave by submitting a Request For Time Off form to his or her supervisor or chief.

Issued: _____
Revised: 10/01/97
Revised: 10/17/02
Revised: 08/12/11
Revised: 05/01/16

Section 5.  **EMPLOYEE BENEFITS**

5-1  **Authorized Absences** _____
5-1-2 **Disability - Duty** _____

Duty disability benefits are provided by the Cook County Pension Fund to eligible employees who miss work due to an injury or illness arising from and in the course of employment.

I.      When an accident occurs at work, refer to the procedures for Notification of Work-Related Injuries.

II.     When the employee is able to return to work, he/she must submit a diagnostic report from his/her physician advising that the employee is capable of returning to work full time and is able to perform duties.  The employee shall submit this statement to the County Medical Division, obtain a release from the County Medical Division, and submit this release to the Human Resources Specialist prior to reporting to his/her worksite.

III.    The Law Office's Human Resources Specialist shall notify the employee's division chief that the employee is authorized to return to work.

IV.     A booklet describing disability benefits is available by contacting the Law Office's Human Resources Specialist.

Issued: _____
Revised: 10/01/97
Revised: 10/17/02
Revised: 08/12/11
Revised: 05/01/16

Section 5. **EMPLOYEE BENEFITS**

5-1 **Authorized Absences** _____
5-1-3 **Disability - Ordinary** _____

If an employee becomes disabled as the result of cause other than a work-related injury, ordinary disability benefits may be available from the Cook County Pension Fund. The employee is eligible for three (3) months of disability for every one year of service that the employee contributes to the Fund not to exceed five (5) years.

Application for ordinary disability benefits must be made through the Fund Human Resources Specialist

Issued: _____
Revised: 10/01/97
Revised: 08/12/11
Revised: 05/01/16

Section 5. **EMPLOYEE BENEFITS**

5-1 **Authorized Absences**
5-1-4 **Educational Leave**

For information regarding educational leave, contact the Law Office's Human Resources Specialist or refer to the appropriate Collective Bargaining Agreement.

Issued: _____
Revised: 10/01/97
Revised: 08/12/11
Revised: 05/01/16

Section 5. **EMPLOYEE BENEFITS**

5-1 **Authorized Absences**
5-1-5 **Family and Medical Leave Act**

For information regarding leaves under the Family and Medical Leave Act, contact the Law Office's Human Resources Specialist or the Cook County Bureau of Human Resources.

Issued: _____
Revised: 10/01/97
Revised: 08/12/11
Revised: 05/01/16

## Section 5.  EMPLOYEE BENEFITS

**5-1  Authorized Absences** _____
**5-1-6 Family Responsibility Leave** _____

For information regarding whether Family Responsibility Leave may be available, contact the Law Office's Human Resources Specialist and refer to the appropriate Collective Bargaining Agreement.

Issued: _____
Revised: 10/01/97
Revised: 08/12/11
Revised: 05/01/16

## Section 5.  EMPLOYEE BENEFITS

**5-1  Authorized Absences** _____
**5-1-7  Jury Duty** _____

Paid leave will be granted for jury duty.  Employees must provide their supervisor or chief with a copy of Summons with the Request For Time Off.

Any compensation received must be submitted to the Accounts Payable Division upon return to work.

Issued: _____
Revised: 10/01/97
Revised: 10/17/02
Revised: 08/12/11
Revised: 05/01/16

## Section 5. **EMPLOYEE BENEFITS**

**5-1  Authorized Absences** _____

**5-1-8  Maternity/Paternity Leave** _____

I.      Employees may be granted maternity or paternity leaves of absence to cover periods of pregnancy/adoption and postpartum child care. Employees need not exhaust all accrued vacation or sick leave prior to going on such leave. The length of such leave, shall not exceed six (6) months. After (6) months other leave time may be available; consult the Human Resources Specialist for other leave options.

II.     An employee requesting a maternity/paternity leave must submit a written request and physician's statement to the Public Defender and his/her division chief no later than (30) days prior to the expected start date of the leave. The copy of the request submitted to the division chief shall not include the physician's statement. Employees may use accrued time. An employee may be eligible for unpaid leave under the Family and Medical Leave Act and may be eligible for a limited period of paid leave under the County's policies or under a Collective Bargaining Agreement. For further information, employees should contact the Law Office's Human Resources Specialist.

   A.      Upon return from maternity leave an employee must provide a physician statement that she is capable of returning to work full-time. The employee shall submit this report to the County Medical Division, obtain a release from the County Medical Division and submit this release to the Human Resources Specialist prior to reporting to her worksite. The Law Office's Human Resources Specialist shall notify the employee's division chief or supervisor that she is authorized to return to work.

   B.      During maternity/paternity leave, the employee's health insurance benefits will continue; but the employee may be required to pay that portion of health care premiums otherwise withheld through payroll deductions during part or all of the employee's leave. Insurance coverage will be provided in accordance with the Family Medical Leave Act.

   C.      Employees who require a maternity leave may be eligible to apply for disability benefits and may do so by contacting the Cook County Pension Fund.

   D.      Upon return from maternity/paternity leave the reinstatement rights of the employee will be identical to those of an employee returning from ordinary disability.

.

Issued: _____
Revised: 10/01/97
Revised: 10/17/02
Revised: 08/02/11
Revised: 05/01/16

Section 5.  **EMPLOYEE BENEFITS**

5-1  **Authorized Absences** _____
5-1-9  **Military Leave** _____

Employees who enter the United States Armed Services are entitled to all the re-employment rights provided for in the Uniformed Services Employment and Re-employment Rights Act and any other applicable statutes.

For service in the United States or Illinois Reserve, see County rules and regulations.

Upon returning from duty, the employee must first report to the Law Office's Human Resources Specialist.

Issued: _____
Revised: 10/01/97
Revised: 10/30/02
Revised: 08/12/11
Revised: 05/01/16

Section 5.  **EMPLOYEE BENEFITS**

5-1  **Authorized Absences** _____
5-1-10 **Personal Days** _____

Employees can earn four (4) personal days each fiscal year, December 1 through November 30. Employees shall accrue personal days at the rate of one (1) per quarter  A new employee must have completed one full quarter of employment before a personal day may be used.  Only accrued personal days may be taken.

Except as otherwise permitted by the Collective Bargaining Agreement, personal days shall not be used in increments of less than one-half day at a time.

Personal days may be used consecutively.  If the health of an employee warrants prolonged absence from duty, the employee may be permitted to combine personal days, sick leave, and vacation leaves.

All personal days must be approved by a division chief/designee.  A Request For Time Off form must be completed by the employee and submitted in advance to his/her division chief/designee.

The use of personal days and restrictions on carrying them into the next fiscal years shall comply with County policy and Collective Bargaining Agreements.

Severance of employment with Cook County will terminate all rights to payment for unused personal days.

Issued: _____
Revised: 10/01/97
Revised: 10/30/02
Revised: 08/12/11
Revised: 05/01/16

Section 5. **EMPLOYEE BENEFITS**

5-1 **Authorized Absences** _____
5-1-11 **Regular/Personal Leave of Absence** _____

An Employee may be granted a leave of absence without pay by the Public Defender/designee. Such leave shall be limited to one (1) month for each full year of continuous employment the County, not to exceed one (1) year.

An employee requesting a leave of absence shall make written application to the Public Defender. If approved by the Public Defender the application will then be forwarded to the Cook County Comptroller for consideration. The application shall include the purpose for the leave of absence and the dates of the requested leave. Upon return to service the employee shall be eligible, to receive the salary and the same or comparable position as held at the time the leave was granted.

An employee will not earn sick, personal or vacation credits or accrue seniority or pension benefits while on a regular/personal leave of absence. An employee on a regular/personal leave of absence in a no-pay status must pay the cost of all insurance benefits in order to keep these benefits in full force and effect. Arrangements for payments of must be made with the Law Office's Human Resources Specialist. The failure to pay insurance benefits costs may result in cancellation of the benefits.

Issued: _____
Revised: 10/01/97
Revised: 10/17/02
Revised: 08/12/11
Revised: 05/01/16

Section 5.  **EMPLOYEE BENEFITS**

**5-1  Authorized Absences** _____
**5-1-12  Sick Leave** _____

I.      Sick leave may be used for health related matters only.

        Sick leave may also be used for maternity or paternity leave.

        Employees accrue twelve (12) sick days per year at the accrual rate of one (1) sick day per month.  Employees can accumulate up to a maximum of 175 days.

        Severance of employment with Cook County terminates all rights to any unused sick leave.

II.     For health-related absences of less than five (5) consecutive days, a doctor's statement as proof of illness will not be required except in individual instances where there is sufficient reason to suspect that the individual did not have a valid health-related absence.  If indicated by the nature of the absence, examination by the employer's physician may be required to make sure that the employee is physically fit to return to work.

III.    If an employee anticipates being off from work for more than five consecutive days, due to a health reason, the employee shall notify the Public Defender.  This notification shall be made in writing, along with a doctor's certificate as proof of illness and shall indicate the necessity of the leave, and, the expected return-to-work date.  This written notification must be submitted as soon as possible to the Public Defender, with a copy to the division chief/designee.

Issued: _____
Revised: 10/01/97
Revised: 08/12/11
Revised: 05/01/16

Section 5.  **EMPLOYEE BENEFITS**

5-1  **Authorized Absences** _____
5-1-13 **Union Leave** _____

Refer to the appropriate Collective Bargaining Agreement.

Issued: _____
Revised: 10/01/97
Revised: 10/17/02
Revised: 08/12/11
Revised: 05/01/16

Section 5. **EMPLOYEE BENEFITS**

5-1 **Authorized Absences** _____
5-1-14 **Vacation Leave** _____

Employees may only use vacation leave that has accrued.

Employees of Cook County are entitled to the following vacation days:

| | |
|---|---|
| 1st through 6th year | 10 business days |
| 7th through 14th year | 15 business days |
| 15 years or more | 20 business days |

Unless otherwise approved, vacation leave may only be taken after the first six months of employment.

An employee may not accrue more than twice his/her annual vacation leave.

A Request For Time Off form must be completed and submitted to his/her supervisor/chief for approval.

Issued: _____
Revised: 10/01/97
Revised: 08/12/11
Revised: 05/01/16

## Section 5.  EMPLOYEE BENEFITS

**5-1  Authorized Absences** _____
**5-1-15  Leave for Attendance at Veterans' Convention** _____

I.      Any employee who is a delegate to a national or state convention of a recognized veteran's organization may request a leave of absence for the purpose of attending the convention.  Any employee requesting a leave with pay should refer to the appropriate collective bargaining agreement or contact the Law Office's Human Resources Specialist for further details.

II.     The employee must complete a Request For Time Off form and submit it, along with a letter from the organization establishing eligibility under this section, to the Public Defender/designee for approval with a copy to her/his division chief.

Issued: _____
Revised: 10/01/97
Revised: 08/12/11
Revised: 05/01/16

## Section 5. **EMPLOYEE BENEFITS**

### 5-2 **Employee Assistance Program**

Cook County has an Employee Assistance Program (EAP) which is designed to assist County employees. Participation in this program is confidential and free to the employee. For additional information, please contact the Employee Assistance Program Office.

Issued: _____
Revised: 10/01/97
Revised: 10/17/02
Revised: 08/12/11
Revised: 05/01/16

Section 5.  **EMPLOYEE BENEFITS**

5-3  **Holidays**

The Law Office observes Cook County paid holidays.

One floating holiday may be taken by the employee with the advance approval of the Public Defender or designee.  The floating holiday shall be credited to those employed by the County on December 1 of each fiscal year and used prior to November 30 of that fiscal year.  Employees shall not be entitled to accrue the floating holiday beyond the end of the fiscal year.  Use of the floating holiday is restricted to a full day increment.  Severance of employment shall terminate all rights to an accrued floating holiday.

Issued: _____
Revised: 10/01/97
Revised: 08/12/11
Revised: 05/01/16

Section 5. **EMPLOYEE BENEFITS**

5-4  **Insurance Programs** _____
5-4-1  **Health, Vision and Dental  Insurance** _____

Employees are eligible for health, vision and dental insurance coverage through Cook County. Employees shall pay health, vision and dental insurance premiums for their coverage unless they are eligible to "opt out."

The health, vision and dental  insurance coverage becomes effective the first business day of the month following the month in which the employee was hired.

Employees may change their choice of insurance carrier only during the annual open enrollment period.

Employees can obtain information regarding health, vision and dental insurance by contacting the Law Office's Human Resources Specialist

Issue: _____
Revised: 10/01/97
Revised: 08/12/11
Revised: 05/01/16

Section 5. **EMPLOYEE BENEFITS**

5-4  **Insurance Programs**
5-4-2  **Life Insurance**

Cook County pays the cost of term life insurance policy.

Employees may be eligible for additional life insurance.  Contact the Law Office's Human Resources Specialist for details.

| | |
|---|---|
| Issued: | |
| Revised: | 10/01/97 |
| Revised: | 10/17/02 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

Section 5. **EMPLOYEE BENEFITS**

5-5 **Cook County Pension Fund**

Employees are required to participate in the Cook County Pension Fund.

For further information, contact the Cook County Pension Fund.

Issued: _____
Revised: 10/01/97
Revised: 08/12/11
Revised: 05/01/16

## Section 6.  CONDUCT OF EMPLOYEES

**6-1 Ethics**

**6-1-1 Adherence to the Illinois Rules of Professional Responsibility**

All attorneys of this Law Office are subject to the Illinois Rules of Professional Conduct promulgated by the Illinois Supreme Court.

Issued: _____

Revised: 1 0/01/97

Revised: 08/12/11

Revised: 05/01/16

Section 6. **CONDUCT OF EMPLOYEES**

6-1 **Ethics**
6-1-2 **Adherence to the Cook County Ethics Ordinance**

Employees of this Law Office shall adhere to the provisions of the Cook County Ethics Ordinance, which is available at http://www.cookcountyil.gov/ethics-board-of/ordinances-regulations-guides/.

Issued: _____
Revised: 10/01/97
Revised: 08/12/11
Revised: 05/01/16

## Section 6.  CONDUCT OF EMPLOYEES

**6-1 Ethics** _____

**6-1-3 Duty to Report Unethical Behavior** _____

All employees have a duty to report, verbally or in writing, promptly and confidentially, to the Public Defender or designee, any improper practices.  Improper practices include, but are not limited to, any illegal, fraudulent, dishonest, negligent, discriminatory or otherwise unethical action arising in connection with the activities of the Law Office.

| Issued: | |
|---|---|
| Revised: | 10/01/97 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

## Section 6. **CONDUCT OF EMPLOYEES**

6-1 **Ethics**
6-1-4 **Security and Confidentiality**

The Law Office will maintain strict control over entrance to the premises, access to personnel and other records, computer information, collective bargaining agreements, contracts, and all Law Office assets. Information about this Law Office, its clients or employees should not be divulged in any manner to anyone other than persons who have a right to know or who are authorized to receive such information. This includes adherence to Cook County's Internet and E-Mail Usage Policy. Employees are required to exercise sound judgment and discretion in carrying out their duties. Employees will be held accountable for any wrongdoing or acts of indiscretion. When in doubt as to whether certain information is confidential, consult with appropriate supervisory or management personnel. This is applicable to the handling of confidential information with internal and external parties.

Confidential information obtained as a result of employment with the Law Office is not to be used by any employee for the purpose of furthering any private interests or as a means of making personal gains. Use of or disclosure of such information can result in discipline.

| Issued: | |
|---|---|
| Revised: | 10/01/97 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

Section 6  **CONDUCT OF EMPLOYEES**

6-1  **Ethics**
6-1-5 **Referrals of Cases to Private Attorneys**

    I.      Referrals for Which Compensation is Received

        Attorneys are allowed to make referrals, consistent with the Illinois Rules of Professional Conduct, the Cook County Ethics Ordinance, and the Employee Manual, for cases, transactions, and/or clients except for the following:

        1.      Cases, transactions, and/or clients originating from the Law Office in which that attorney will receive any consideration (direct or indirect) for any case or transaction in which the referred client originates from the Law Office.

        2.      In any case, transaction, and/or client in which Cook County is an involved party.

        Such referrals shall not be made during normal business hours or while at the Law Offices. Attorneys making such referrals shall not represent or imply to the client that the Law Office itself is either making the referral or recommending the attorney to whom the case is referred.

    II.      Referral for Which No Compensation is Received

        Attorneys are allowed to make referrals for any case or transaction in which the referred client originates from the Law Office so long as they are not receiving any type of consideration for the referral. When making such referrals, attorneys should make reasonable efforts to not favor one attorney or law firm and to avoid the appearance that they are receiving consideration for the referral. This may be done by providing the names of more than one attorney or law firm or by providing names of bar associations that provide referrals.

| Issued: | |
|---|---|
| Revised: | 10/1/97 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

## Section 6. CONDUCT OF EMPLOYEES

**6-2 Behavior**
**6-2-1 Visitors in the Workplace**

The Law Office is a place of business. To ensure a professional atmosphere, the frequency and duration of interruptions caused by personal visits to an employee, during the business day, must be kept to a minimum so as not to impact the daily productivity of the employee or the normal business operation of the Law Office. Thus, the Law Office is unable to provide day care service for children during the business day. To ensure security in the work place, employees are expected to escort all visitors while they are present at a work site. Employees shall exercise restraint in bringing visitors to work during business hours, except for special Law Office-authorized events.

Issued: _____
Revised: 10/01/97
Revised: 10/17/02
Revised: 08/12/11
Revised: 05/01/16

Section 6. **CONDUCT OF EMPLOYEES**

6-2 **Behavior**
6-2-2 **Secondary Employment**

I.    The Law Office recognizes that employees are entitled to engage in secondary employment which does not conflict with the operation or mission of the Law Office.  Examples of conflicts to be avoided, without the consent of the Public Defender or its designee, include but are not limited to:

   A.    Representing an individual, or individuals, in any capacity in any criminal matter, any matter in child protection, or before any civil court or administrative agency;

   B.    Handling or becoming involved with any criminal matter or any matter in child protection in Cook County;

   C.    Working a quantity of hours that negatively impacts the ability of an employee to perform his or her primary job;

   D.    Conducting secondary employment while present at a Law Office site;

   E.    Conducting secondary employment during normal business hours without taking accrued time off;

   F.    Conducting any secondary employment, or handling any matter that conflicts with the Cook County Ethics Ordinance or the operation or mission of the Law Office.

II.    All employees of the Law Office must fill out and return the County's Secondary Employment Disclosure form.  Employees must disclose all secondary employment  to their immediate supervisors.  Upon completion, the form shall be sent to the First Assistant for review and approval.

   All employees are under a continuing obligation to update information relative to secondary employment.

| | |
|---|---|
| Issued: | |
| Revised: | 10/01/97 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

## Section 6. CONDUCT OF EMPLOYEES

6-2 **Behavior**

6-2-3 **Attire**

Employees should dress appropriately for their work assignment and their work duties. Supervisors may direct employees who are not dressed appropriately to change clothes or to go home for the day. If an employee is sent home, that employee will not be paid for the day unless he or she elects to take a vacation or personal day.

| | |
|---|---|
| Issued: | |
| Revised: | 10/01/97 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

Section 6.  **CONDUCT OF EMPLOYEES**

6-2  **Behavior**
6-2-4 **Unauthorized and Excessive Absences**

I.      Purpose

Time off by employees should be consistent with the staffing and operational needs of the Law Office.  To ensure the effective representation of clients and overall operation of the Law Office, it is the aim of this Section 6-2-4 to promote regular attendance by employees, while providing opportunities for the time off needed or desired.  Additionally, the Law Office intends to assure the availability of sufficient staff to meet the operational needs of the Law Office.

II.     Definitions

As used herein:

A.      "Unauthorized Absence" includes but is not limited to any of the following:

1.      Taking time off for any reason in excess of accrued time allowed by the County Board without the employee's written request (see, Paragraph IV below) approved by the Public Defender or designee;

2.      Being absent without notice;

3.      Failure by an employee to inform the employee's supervisor of an absence no later than one-half hour before the employee's scheduled reporting time on the day in question; or

4.      Improper use of any leave or time off.

B.      "Excessive Absence" includes but is not limited to any of the following:

1.      Frequent absences or:

2.      Repeated unauthorized late arrival to or early departure from work

III.     Consequences of Taking Unauthorized Absence or Excessive Absences

    A.     Any unauthorized absence or excessive absence by an employee may result in disciplinary action up to and including discharge. Also, if an employee has no accrued sick vacation or personal business days, then the employee will be docked for the amount of unauthorized absence taken.

    B.     An employee absent without notice for three consecutive business days can be regarded as having abandoned the position. The employee may be terminated unless acceptable and verifiable extenuating circumstances are established.

IV.     Monitoring Time Off

Employees are responsible for knowing how much sick, vacation, floating holiday, and personal business days they have accrued when they request time off. All written requests for time off must be accompanied by a statement indicating how much accrued time remaining the employee has.

V.     Use of Leaves of Absence

Employees who experience recurring absences due to a serious illness of him/herself or family members are encouraged to consider requesting the appropriate leave of absence under the auspices of the County Board's various leave policies or the Family and Medical Leave Act. [Refer to pertinent sections of this Manual or contact the Personnel Supervisor for more information about these policies and applicable federal and state law.]

| | |
|---|---|
| Issued: | |
| Revised: | 05/01/98 |
| Revised: | 10/17/02 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

Section 6.  **CONDUCT OF EMPLOYEES**

6-2  **Behavior**
6-2-5  **Electioneering**

The following serves as reminders of the responsibility to this Law Office and Cook County government with regard to political activity and/or electioneering.

I.       It is strictly forbidden to conduct any type of political activity on County premises except for Union or Pension Board elections.

II.      The use of any Law Office resource, i.e. supplies, equipment, furniture, furnishings, etc., inclusive of staff (secretaries, paralegals, clerks, lawyers, interpreters, etc.), for election and/or other politically activity is expressly prohibited.

III.     It is forbidden to send election and/or other politically related materials via the interoffice mail except for Union or Pension Board elections.

IV.     Except for Union or Pension Board elections, it is prohibited to use Law Office mailboxes, regular and electronic, for distribution of election material; further personal distribution at sites is equally forbidden.

V.       Flyers of a political nature cannot be posted on any bulletin board or other surface within the Law Office except for Union and Pension Board elections.

VI.     Adhere to the provisions of the Cook County Ethics Ordinance, which is available at http://ccnet.ccounty.com/portal/server.pt

Issued:     03/01/99
Revised:  08/12/11
Revised:  05/01/16

Section 6.  **CONDUCT OF EMPLOYEES**

6-2 **Behavior**
6-2-6 **Adherence to Cook County Violence in the Workplace Policy**

I.      Statement of Policy

All employees of this Law Office shall adhere to the Cook County Workplace Violence Policy and Cook County Policy on Domestic and Sexual Violence in the Workplace.  The objective of Section 6-2-6 is to provide a work environment that is free from violence or threats of violence against employees, clients, and guests of the Law Office of their property and property of the Law Office. This includes domestic and sexual violence occurring in Law Office worksites. The Law Office will timely investigate all incidents of violence, potential violence, or threats of violence of which it becomes aware and will take appropriate action to resolve these situations. Employees are urged to be alert and immediately inform management personnel of any behaviors which violate or could constitute a violation of this Section.

II.     Definition

Workplace violence includes, but is not limited to, a single behavior or a series of behaviors which constitute actual or potential assault, battery, harassment, intimidation, threats or similar actions, destruction or attempted destruction, or threats to County property or to personal property, and which occurs in a Law Office  worksite or while an employee is engaged in Law Office  business. This definition includes domestic and sexual violence occurring in a  Law Office  worksite or while an employee is engaged in Law Office business.

III.    Procedures

All employees are responsible for establishing and maintaining a work environment that promotes professionalism and is free of workplace violence.  This includes being alert to situations in which workplace violence is occurring or is likely to occur, and immediately notifying Law Office management of any such incidents or concerns.

Violations of this Section 6-2-6 will lead to appropriate disciplinary action.

The Law Office of the Cook County Public Defender and its employees will not, in any way, retaliate against an individual who makes a report of violence in the workplace. Retaliation is a serious violation of this Section 6-2-6 and should be reported immediately to any member of management. Any person found to have retaliated against another individual for reporting workplace violence will be subject to discipline.

| | |
|---|---|
| Issued: | 03/1/99 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

## Section 6.  CONDUCT OF EMPLOYEES

**6-2 Behavior**

**6-2-7 Order of Protection**

Employees who apply for or obtain Orders of Protection which list Law Office locations as being protected sites must immediately provide management at that location(s) with a copy of the petition and a copy of any Temporary and /or Plenary Order of Protection.  A copy must also be forwarded to the Chief of Staff.

Members of management who receive such reports will immediately inform the Public Defender and/or the Public Defender's designees as well as the Facilities Management Office at the location(s).

Issued:     05/06/99
Revised:  10/17/02
Revised:  08/12/11
Revised:  05/01/16

## Section 6.  CONDUCT OF EMPLOYEES

**6-2 Behavior**
**6-2-8 Use of Law Office  Resources**

I.      Statement of Purpose

County time, property, services, resources and assets are to be used only for conducting official business of Cook County or the Law Office.

II.     Definition

Law Office resources constitute all County property and services including, but not limited to: an employee's time during normal working hours; co-workers' time; services provided, such as messengers, interoffice and electronic mail; office funds; office equipment, such as computers, telephones, facsimiles, typewriters, postage meters, and computer hardware; supplies, such as paper, letterhead, envelopes, pens, pencils, markers, and tape; postage; computer software; and books and research materials.

III.    Impermissible Use of Law Office Resources

Excluded activities include, but are not limited to: union business (other than that allowed by the collective bargaining agreements, such as the processing of grievances and disciplinary matters); personal and family matters; personal business ventures or other outside commercial activities; work for a religious institution or a private or non-profit organization; and school work.

IV.     Statement of Non-Limitation

Statements made in paragraphs II and III above are not intended to provide an all-inclusive list, but rather are intended to provide illustrative examples of the types of items which are contemplated by this Section 6-2-8.

V.      Exceptions

Any exceptions must be approved by the Public Defender or the Public Defender's designee.

VI.     Violations

Violations of this Section 6-2-8 may result in disciplinary action being taken up to and including termination.

VII.    When Clarification is Needed

An employee who needs any further clarification should contact his or her immediate supervisor and refer to the Cook County Ethics Ordinance.

Issued:    04/10/06
Revised:  08/12/11
Revised:  05/01/16

Section 6.  **CONDUCT OF EMPLOYEES**

6-2 **Behavior**
6-2-9 **Duty to Report Arrests**

All employees of the Law Office  must immediately disclose in writing to the Public Defender if he/she is arrested. The disclosure must include the date and location of the arrest, case number, and nature of the charges. All employees are also required to adhere to the Collective Bargaining Agreements regarding this matter.

Issued:    10/01/97
Revised:  08/12/11
Revised:  05/01/16

Section 6. **CONDUCT OF EMPLOYEES**

6-2 **Behavior**
6-2-10 **False Complaints**

An employee who knowingly makes a false complaint shall be subject to discipline.

Issued: _____ _____
Revised:  10/01/97
Revised:  05/01/16

## Section 6.  **CONDUCT OF EMPLOYEES**

**6-2 Behavior** _____
**6-2-11 Work Location Change**_____

I.      When an employee resigns or is assigned to another workplace, it is the responsibility of that
        employee to:

   A.      Pack up and remove all personal items from the office he or she is vacating.

   B.      Pack up all work-related materials and submit a request to the support staff supervisor to
           have these materials removed.  If an employee is transferring to a new location, support
           staff will move the work-related materials, such as files that the employee is continuing to
           work on,        to the new location.

   C.      Clean out bookcases, file cabinets, and desks in the office and leave the office in a suitable
           condition for another employee to move into that space.

II.     Information technology is responsible for the allocation and support of the inventory of computers,
        monitors, scanners, printers, copiers, and facsimile machines.  Employees are not entitled to the
        automatic reallocation of such assets to new offices and workspaces and should not remove such
        assets without prior approval.

III.    Administrative Operations is responsible for the allocation of office supplies, telephone, and
        furniture.  Employees are not entitled to the automatic reallocation of such assets to new offices and
        workspaces and should not remove such assets without prior approval.

| Issued: | |
|---|---|
| Revised: | 10/01/97 |
| Revised: | 05/01/16 |

## Section 6. **CONDUCT OF EMPLOYEES**

6-2 **Behavior**

6-2-12 **ARDC Complaint Inquiry**

Every attorney shall inform the Public Defender/designee and his/her division chief in writing whenever the attorney receives a communication regarding any complaint or inquiry from the Attorney Registration and Disciplinary Commission (ARDC). If the ARDC requests a response from an attorney, that attorney's supervisor must approve the response before the response is submitted to the ARDC. A copy of all letters from ARDC regarding complaints and any responses thereto shall be submitted to the Public Defender or designee.

All attorneys in the Law Office of the Cook County Public Defender are expected to know and abide by the Illinois Rules of Professional Conduct and the Rules of the Circuit Court of Cook County.

Issued: _____
Revised:     10/01/97
Received     05/01/16

Section 6.  **CONDUCT OF EMPLOYEES**

6-2 **Behavior** _____
6-2-13 **Attorney Registration** _____

I.      Attorneys employed by the Law Office must be admitted to practice law in the State of Illinois.

II.     It is the responsibility of attorneys to keep their licenses current and active.

III.    Every attorney in the Law Office shall annually register with the Attorney Registration and Disciplinary Commission, as provided under Supreme Court Rule 756, before the first day of January.

IV.     To update the Office's licensure records, every attorney who reports to a division chief must annually submit a photocopy of the Attorney Registration and Disciplinary Commission (ARDC) Card, providing proof of active status in the new year, or proof of payment to ARDC pending issuance of the card, to his/her division chief no later than December 31st of the current year.

V.      All other attorneys who do not report to a division chief shall annually submit a photocopy of their ARDC cards, providing proof of active status in the new year, or proof of payment to ARDC pending issuance of the card, to the Human Resources Specialist no later than December 31st of the current year.

VI.     For those attorneys showing proof of payment only, a photocopy of the ARDC card must be submitted as directed above, upon receipt.

VII.    Attorneys in violation of this policy are subject to discipline.

| | |
|---|---|
| Issued: | |
| Revised | 10/01/97 |
| Revised: | 08/12/11 |
| Received: | 05/01/16 |

## Section 6. CONDUCT OF EMPLOYEES

### 6-3 Public Relations
### 6-3-1 Participation at Outside Events

I.      Overview

The Law Office encourages its employees to participate as speakers, trainers, presenters or in other capacities on behalf of the Law Office at conferences, seminars, public events or similar forums whenever it is operationally feasible and in the best interest of clients. Before the event, employees must submit a written request to participate on behalf of the Law Office to his/her chief, who will forward the request to the Public Defender or designee.

II.      Purpose

To promote community outreach and disseminate information that is consistent with the mission of the Law Office.

III.      Procedures

Employees seeking authorization to participate as speakers, trainers, presenters or in other capacities on behalf of the Law Office at non-CCPD sponsored events must comply with the following guidelines:

A.      Whenever an employee participates as a representative of the Law Office, the employee must obtain authorization from the Public Defender/designee.

B.      Authorization must be obtained by the employee prior to any oral or written commitment being given by the employee to the event sponsors.

C.      Any employee seeking such authorization shall submit a detailed request to his/her immediate supervisor or division chief at the earliest possible date. This request should include the title of the event, the name of the event sponsor, the date/s and time/s the employee will be present at the event, a description of the general subject matter of the event and description of the employee's proposed presentation and of any reimbursement sought. Any written invitations to participate by the sponsor/s should be attached to the request.

D.     Requests that are consistent with the mission of the Law Office and do not interfere with operational needs will be forwarded by the chief to the Public Defender/designee for final approval. Seminar days may be granted in such instances.

E.     Any request not approved will necessitate the employee's using personal leave or vacation time, subject to the operational needs of the Law Office, to participate in the event. In those instances where the Law Office has not authorized participation, employees may not hold themselves out as spokespersons of the Law Office

Section 6.  **CONDUCT OF EMPLOYEES**

6-3 **Public Relations**
6-3-2 **Media**

I.      Purpose

        The Law Office encourages free expression while protecting the interests of the Law Office's clients. The Law Office recognizes the need for uniformity and accuracy in representing our clients.

II.     Procedure

A.      Only the Public Defender or designee may speak to the media about the Law Office's policies, procedures or official positions on general matters.

B.      No employee should *initiate* contact with the media or hold a press conference regarding policies, procedures, or the Office's positions on general matters, or regarding a particular case.

C.      Only attorneys may *respond* to questions from the media about particular cases, and then only under these circumstances:

        1)   The client has given the attorney informed consent to talk to the media, which means the client agrees to allow the attorney to respond to media questions after the attorney has communicated the material risks of and alternatives to responding to media questions, pursuant to the Illinois Rules of Professional Conduct 1.0(e); 1.6(a), AND,

        2 )  a. The attorney has received, from the Public Defender or designee, pre-approval of any statements to be made to the media, OR

             b. When obtaining prior approval is not practical and when an immediate response to a media inquiry is required in order to protect a client, the attorney may respond to media questions, but must limit his or her statements to information which is already a matter of public record (such as the charges, defense asserted, or arguments made in written motions), OR

             c. The attorney may make general statements, including but not limited to statements such as these:
                "The Public Defender or the Public Defender's spokesperson will respond to your question as soon as possible."
                "My client's innocence will be established at trial."
                "The evidence will establish that my client is not guilty."
                "This is a juvenile case and these matters are confidential and not subject to comment."

D.     When an attorney makes statements to the media, pursuant to Section C above, that attorney may only "make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client" and "such statements must be limited to such information as is necessary to mitigate any recent adverse publicity."  Illinois Rule of Professional Conduct 3.6(c). When speaking to the news media, attorneys should always be mindful of the client's best interest, and should not release personal information (such as addresses, names of family members, etc.) concerning clients without the express consent of the client.

E.     Employees who write articles or appear on radio or television programs to express their personal views, must clearly indicate that the views that they express do not necessarily reflect the positions of the Law Office. [Refer to Section 6-3-1, Participation at Outside Events for further details on this situation.]

Section 6.  **CONDUCT OF EMPLOYEES**

6-3 **Public Relations**
6-3-3 **Social Media**

I.      Purpose

        The Law Office encourages free expression while protecting the interest of the Law Office's clients.

II.     Policy

        A.      No social media forum sponsored by or purporting to be sponsored by, the Cook County Public Defender may be created, published to, or maintained without prior approval of the Cook County Public Defender. Prior to implementing an approved social media site, the Public Defender must ensure that it has the ability to manage, store and retrieve the site's content as required under public records and record retention laws.

        B.      All official Public Defender sponsored social media sites or services are considered an extension of the Cook County Public Defender's information networks and are governed by the Electronic Data and Technology Policy, which generally requires that technology usage be for business-related purposes, and the Communications Policy, contained in the Employee Handbook.

        C.      The Public Defender reserves the right to restrict or remove any content that is deemed in violation of this policy or any applicable law, rule or policy. Designated Cook County Public Defender social media administrators will monitor content posted to Public Defender sponsored social media sites.

        D.      Public Defender employees who participate in social media sites are responsible for complying with applicable federal, state, and local laws, regulations, and policies. This includes adherence to laws and policies regarding copyright, record retention, public records, confidentiality, and privacy as well as the terms and conditions contained in the license agreement between the social media provider and the Cook County Public Defender's Office.

E.     When using social media, employees who are identify themselves as employees of the Cook County Public Defender's Office shall adhere to the following etiquette guidelines:

1.     **Employees are not anonymous.** Each employee is responsible for his/her actions. Everything posted on the Web can be traced back to its author. The cookcountyil.gov address attached to an employee name implies that that employee is acting on behalf of the Public Defender. The employee is responsible for any of his/her online activity conducted with a County email address, conducted with County resources or conducted on County time. The policies, procedures, and work rules of the Public Defender apply to social media usage.

2.     **Keep confidentiality.** It is inappropriate to disclose or use the Public Defender's confidential information in any form of social media. Sharing this type of information, even unintentionally, can result in violations of law and loss of confidence in the Public Defender.

3.     **When participating in any online community in which an employee's work is discussed the employee must give his/her true identity and affiliation with the Cook County Public Defender.** Questions regarding the permissible use of a networking site or program to seek evidence helpful to a client or to perform other work-related duties should be addressed to the employee's supervisor on a case by case determination.

4.     **Employees should be respectful.**

        a.     Respect the privacy of others. Before sharing a comment, post, picture or video through social media, the employee must obtain the consent of any people or organizations identified by this activity.

        b.     Respect others. **When posting as an employee of the Cook County Public Defender**, whether on a Public Defender sponsored social networking site or in the public domain, site content and comments containing any of the following **are prohibited and shall not be posted:**

            i.     Profane or harassing language or content;

            ii.     Content that promotes, fosters, or perpetuates discrimination on the basis of race, creed, color, age, religion, gender, genetic information, marital status, status with regard to public assistance, national origin, physical or mental disability or sexual orientation;

      iii.     Sexual content or links to sexual content that is not relevant to a legal matter under discussion;

      iv.     Solicitations of commerce;

      v.     Political activity;

      vi.     Conduct or encouragement of illegal activity;

      vii.     Information that may tend to compromise the safety or security of the public or public systems;

      viii.     Content that violates a legal ownership interest of any other party;

      ix.     Ad hominem or personal attacks;

      x.     Any content or activity prohibited by the license agreement between the specific social media provider and the Cook County Public Defender

5.   **The employee must identify any copyrighted or borrowed material with citations and links.** When publishing any online material through social media that includes another's direct or paraphrased quotes, thoughts, ideas, photos, or videos, the employee must use citations and link to the original material (trackback) where applicable.

6.   **Before posting any online material through social media, the employee should ensure that the material is accurate and truthful.**

7.   **The employee must not post any information or conduct any online activity that may violate applicable local, state or federal laws or regulations.**

8.   **The employee must not offer legal advice or form attorney-client relationships using social media.**

The Public Defender respects the First Amendment free speech rights of all staff, but all staff must remember that other government staff, criminal justice stakeholders, legislators, court personnel, clients, law enforcement, prosecutors, supervisors, colleagues and taxpayers have access to online content each of them post. Remember that everything posted by a staff member may be seen by anyone, forever.

III.    Employees violating this social media policy are subject to disciplinary action, up to and including termination of employment in accordance with the Collective Bargaining Agreement.

Issued: _____
Revised:   10/01/97
Revised:   08/12/11
Revised:   05/01/16

Section 7. **OFFICE ADMINISTRATION**

7-1 **Technology**
7-1-1 **Employee-Owned Computers in the Workplace**

It is the policy of the Law Office to require its employees to adhere to the following procedures regarding the use of employee-owned computers. These procedures are designed to guide employees and to avoid any possible conflicts concerning such equipment in the Law Office.

I.     This policy applies to all personal computers, desktop, laptop, tablet, netbook and any other type of programmable device.

    A.     Users are not required to use their personal devices for work purposes. Should they choose to do so, Users' personal data can become intermingled with Public Defender IT Resources. By choosing to use their personal devices for work purposes, Users acknowledge and consent that any personal data contained in Public Defender IT Resources or intermingled with Public Defender information may also be considered a Public Defender IT Resource, which may be captured, monitored, used, disclosed, and deleted as the Public Defender deems necessary and as permitted by law. In such cases, the Public Defender cannot guarantee that Users' intermingled personal data will be separated or treated differently from the Public Defender's data when the County captures, monitors, uses, discloses or deletes the County's data.

    B.     All employees who have their own computer equipment in the Law Office are solely responsible for its maintenance and the purchase of any supply items needed for such equipment.

    C.     The Law Office is not responsible for, nor liable for, any theft, damage or moving of such employee-owned equipment from one space to another.

    D.     The Law Office will not insure employee-owned equipment.

    E.     The Law Office may, if requested, supply a list of various software packages it uses on equipment owned by the Law Office. The Law Office is under no obligation to consult or advise any employee of the change of software. If the Law Office decides to change its software, the Law Office is not responsible for notifying employees, nor for employee expenditures to purchase compatible software.

F.    The Law Office is not required to supply employees with software or supplies to be used on any equipment owned by employees.

II.    In order to avoid the risk of transferring viruses from one computer to the next, the method of transferring data from an employee-owned computer to equipment owned by the Law Office will be determined by guidelines established by the Public Defender.

III.    Employee-owned equipment shall not be used by a co-worker without the express permission of the employee who owns the computer.

IV.    Any unauthorized use of equipment owned by an employee or by the Law Office can result in disciplinary action.

V.    Any case-related computerized work product generated on an employee-owned computer shall be printed on demand of the supervisor assigned to that case.

VI.    If, at any time, the use of employee-owned computers does not comport with recognized safety and security standards or with the capacities of the facilities, the Law Office may, at the will of the employer, require any employee to remove a computer system from the Law Office.

VII.    All employee-owned computer systems shall be connected to the Law Office's electrical outlets through the use of an UL-approved, 15 amp or higher, surge protector or power strip with surge protection purchased at the expense of the employee.

The above policy is being implemented in the best interest of client confidentiality, the Law Office and all of its employees.

| Issued | |
| --- | --- |
| Revised: | 10/01/97 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

## Section 7. OFFICE ADMINISTRATION

### 7-1 Technology
### 7-1-2 Personal Use of Law Office Computer Hardware/Software

The personal use of Law Office hardware or software is prohibited.

No software program owned by the Law Office is to be copied for personal use. Use of unauthorized software on computer equipment owned by the Law Office is prohibited.

Violation of this policy may result in discipline up to and including termination of employment.

County IT Resources are intended for official County business. However, minimal and incidental personal use of County IT Resources does not violate this policy if the use is in a minimal amount and duration, does not interfere with a User's work-related duties, and does not burden the County's network or impose cost upon the County. An example of minimal and incident personal use that does not violate this policy is the sending of occasional, personal emails. However, minimal and incidental personal use does not allow a User to: (a) engage in prohibited political activities, (b) perform activities associated with non-County employment, (c) share County IT Resources with family members or other non-Users, or (d) otherwise violate this policy.

By choosing to use County IT Resources for minimal and incidental personal purposes, Users acknowledge and consent that any personal data contained in County IT Resources or intermingled with County information may also considered a County IT Resource, which may be captured, monitored, used, disclosed, and deleted as the County deems necessary and as permitted by law. The County cannot guarantee that Users' intermingled personal data will be separated or treated differently from the County's data when the County captures, monitors, uses, discloses or deletes the County's data.

| Issued: | |
|---|---|
| Revised: | 10/01/97 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

## Section 7. OFFICE ADMINISTRATION

**7-1  Technology**
**7-1-3 Cook County Software Policy**

It is the policy of the Law Office to require its employees to adhere to Cook County's policy and procedures regarding the use of computer software licenses acquired by Cook County.

It is the policy of Cook County to respect all computer software copyrights and to adhere to the terms of all software licenses to which the County is a party. Each County agency/bureau will be responsible for the enforcement of this policy in its area.

County employees may not duplicate any licensed software or related documentation for use either on County premises or elsewhere unless there is an express authorization to do so by agreement with the licensor.  Unauthorized duplication of software may subject employees and/or the County to both civil and criminal penalties under the United States Copyright Act.

Employees may not give software to any outsiders (e.g., consultants and contractors) hired by the County. Software that is purchased by the County but used on County projects by contractors, remains the property of Cook County.

County employees may use software on local area networks or on multiple machines only in accordance with applicable license agreements.

Cook County computers are County assets and must be kept both software legal and virus free. Only software purchased through the procedures outlined above may be used on County machines. Employees are not permitted to bring software from home and load it on County computers. Generally, County owned software cannot be taken home and loaded on an employee's computer if it also resides on the County's computer. If an employee is to use software at home, the agency/bureau should purchase a separate package and record it as a County asset in the software register.  However, some software companies provide in their licensing agreements that home use is permitted under certain circumstances.

Go to Information Technology under Agencies at http://ccnet.ccounty.com/portal/server.pt to view the complete standards and policies.

Issued:    02/17/98
Revised: 05/01/98
Revised: 08/12/11
Revised: 05/01/16

Section 7. **OFFICE ADMINISTRATION**

7-1 **Technology**
7-1-4 **Computer Usage**

It is the policy of the Law Office to ensure that upgrades or enhancements to the computer capabilities provided to employees are procured in an organized manner, consistent with County guidelines and requirements.  Information is to be accessed, modified and disseminated only in authorized professional manner as follows:

I.      No employee has authorization to purchase data processing equipment, hardware or software, or to install or download software for any Law Office  computer, printer or for any other Law Office  data processing purpose without the approval of the Public Defender and Cook County Bureau of Information Technology.  Requests for the purchase of any data processing equipment, hardware or software, or for installing or downloading software shall be in writing and forwarded through the Law Office chain-of-command to the Public Defender.

II.     Any research or work conducted or produced by an employee or volunteer intern of this Law Office  on County time, or by using County-owned equipment, hardware or software, or in furtherance of a business-related purpose of the Law Office  (regardless of the time of day or ownership of the hardware or software) is the sole and exclusive property of the Law Office .  Any materials, information, or work product so produced (whether authorized or unauthorized) belongs to the Law Office, including but not limited to all work done in relation to cases, research, or case summaries.

III.    Any unauthorized access to, copying, tampering, destruction, modification or dissemination of materials or work products belonging to the Law Office  regardless of the equipment, hardware or software used to facilitate such action will be prosecuted to the fullest extent provided by law and subject the employee to discipline up to and including termination of employment.

IV.     In those instances where the Law Office  has not authorized an employee to engage in the receipt or dissemination of computer-generated information on behalf of the Law Office , employees may not (explicitly or implicitly) hold themselves out as representing the Law Office in any manner while gaining access to or disseminating the information.  In such instance, no employee may use an Law Office or County job title or the title of "Assistant Public Defender" to create the impression the employee is acting as a representative of the Law Office .

V.      The use of Law Office  data processing equipment, hardware or software for personal or non-business related purposes is prohibited.

Issued: _____
Revised:   05/01/98
Revised:   08/12/11
Revised:   05/01/16

<u>Section 7.</u> **OFFICE ADMINISTRATION**

7-1 **Technology** _____

7-1-5 **Use of Electronic Communications Systems** _____

I.      Policy

The Law Office promotes the responsible business use of electronic mail, facsimile machines, voice mail, computers and electronic communications systems (hereafter collectively referred to as "systems"). The systems are the property of the Law Office and are intended solely for carrying out employer business. Information stored or transmitted in or on Law Office  systems is subject to inspection at any time without notice.  The Law Office  reserves the right to enter these systems and review, copy, disclose or delete any  messages or information retrieved or contained in them.

II.     Responsibilities

Employees of the Law Office must adhere to the provisions of the Cook County Bureau of Information Technology Policy, which is available at http://ccnet.ccounty.com.

Systems users shall keep communications business-like.  Prior to sending sensitive/confidential information through the systems, the user should make the necessary arrangements with the recipient to ensure the security of the sensitive/confidential communications, including encryption when possible.

Users are expected to check their systems every business day or to make appropriate arrangements for retrieval of communications from these systems.

III.    Prohibited Use

Communications that are profane, vulgar, harassing, defamatory, derogatory, offensive, anonymous or promote a user's personal, non-business-related affairs are prohibited.

Employees shall not send or retrieve other employees' messages unless such employee is specifically authorized to do so.

Employees must not use the systems to:

A.      Pirate software;

B.     Steal passwords, break into or attack other computer systems;

C.     Participate in the viewing or exchange of pornography or obscene materials, or engage in any other inappropriate or illegal activities;

D.     Upload, download or otherwise transmit copyrighted, trademarked or patented material, trade secrets or other confidential, private or proprietary information or material, other than for such use as the provider or owner may expressly permit;

E.     Enable unauthorized third parties to gain access to or use the systems or otherwise jeopardize the security of the Law Office computer systems;

F.     Install or run software on the Law Office systems, in violation of any license agreement, or in a manner which will interfere with the normal function of those systems or the networks to which they are attached;

G.     Engage in usage that would constitute a violation of Illinois Stalking No Contact Order Act (740 ILCS 21/1, effective Jan. 1, 2010), Cook County Domestic and Sexual Violence Workplace Policy or Cook County Violence in the Workplace Policy.

VI.     This policy does not create or imply a right to use or have any of the above-mentioned systems.

| Issued: | |
| --- | --- |
| Revised: | 10/01/97 |
| Revised: | 04/13/04 |
| Revised: | 06/01/04 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

Section 7. **OFFICE ADMINISTRATION**

**7-2  Legal Research**

**7-2-1  LEXIS NEXIS Use Policy**

I.      LEXIS Use

   The electronic legal research product known as "LEXIS NEXIS" is available for Law Office
   business matters only.  The Law Office provides access to LEXIS through all office computers.  The
   Cook County contract with LEXIS NEXIS allows all authorized users to have unlimited access to
   three categories of LEXIS NEXIS databases:  LEGAL; NEXIS; and PUBLIC RECORDS.  Only
   employees authorized by their chiefs and LEXIS users with an I.D. access number may sign on
   to LEXIS NEXIS.

II.      Monitoring Usage

   To ensure compliance with this policy, the Law Office  monitors individual usage reflected in
   itemized LEXIS bills.  Compliance with County and Law Office  policies governing the proper
   usage of automation, computer hardware and software, the Internet, electronic mail, and
   electronic communications systems will also be monitored. Any unauthorized use of LEXIS
   may result in discipline.

III.      Related Policies

   To gain web-based access to LEXIS NEXIS, employees are required to read and sign the Cook
   County Bureau of Information Technology's Internet Policy, and E-Mail Policy and Software–
   Code of Ethics. See also the following Law Office policies: 7-1-1Technology Use; 7-1-5 Use
   of Electronic Communications Systems; and 7-2-2 LEXIS Use Rules.

<u>Section 7.</u>  **OFFICE ADMINISTRATION**

7-2  **Legal Research**
7-2-2  **LEXIS NEXIS Use Rules**

I.      LEXIS NEXIS Availability

An unlimited number of users may access the LEGAL/NEXIS/PUBLIC RECORDS databases simultaneously

II.     I.D. Access Numbers

Any employee who wishes to use LEXIS NEXIS must obtain a LEXIS I.D. access number pursuant to paragraph IV of this policy.  LEXIS I.D. access numbers must not be shared. Supervisors should apply to their Chief for temporary LEXIS I.D. access numbers when circumstances require.

III.    LEXIS NEXIS Training

Employees may submit a request for LEXIS training to their immediate supervisors or division chiefs.

IV.     Obtaining LEXIS  I.D. Access Numbers

Any employee after scheduling or receiving LEXIS training who needs to obtain a LEXIS  I.D. access number, should request a number through his/her division chief.  The chief will in turn submit the employee's name to the Law Office's LEXIS NEXIS liaison.

V.      Home Use

Use of LEXIS NEXIS at home is authorized strictly for Public Defender business-related matters only.  Any personal costs, such as telephone bills and internet service provider, associated with home use will be borne by the user, not the Law Office.

VI.     Summer Clerks and Interns

Summer clerks, interns, and persons involved in special projects must be proficient LEXIS users as determined by the supervisor or division chief at that location and have their own LEXIS I.D. access numbers.  They will only be permitted to use LEXIS when supervised by a permanent staff member who has been trained and has his/her own LEXIS I.D. access number.

VII.     LEXIS Sign-On Procedure

To save users frustration and time, users should formulate their search before signing on to LEXIS. If assistance is needed, dial 1-800-543-6862 (LEXIS). This is the LEXIS reference service number available 24/7 to help with formulating a search.

VIII     Access to Excluded Materials

Access to a small number of materials is not included in the County flat-rate contract and access to these materials will result in an hourly rate charge. Any authorized user wanting to access any LEXIS materials excluded from the flat-rate, must make a request to his/her immediate supervisor

| Received: | |
|---|---|
| Revised: | 0/01/97 |
| Revised: | 10/17/02 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

Section 7.  **OFFICE ADMINISTRATION**

**7-3  Law Office Space and Equipment**
**7-3-1  Conference Room Reservation Procedures**

All employees should follow the procedure at the requested location when reserving one of the Law Office conference rooms.  Any questions regarding the procedure for reserving a conference room should be made to the Chief at that location

| | |
|---|---|
| Issued: | |
| Revised: | 10/01/97 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

Section 7. **OFFICE ADMINISTRATION**

**7-4 Payroll Procedures**
**7-4-1 Payroll and Time Sheet Practices**

In order to receive a paycheck, each employee must sign the Daily Time Record upon arriving at his/her worksite and then again upon leaving for the day. This means ALL employees must sign in at the time of arrival and must not sign out until they leave at the end of the day. The employee shall not sign in and out when he/she first signs in each morning. The employee's signature is certification of the accuracy of the hours worked.

Absences for any reason must be approved by the supervisor/chief. Notice of absence must comply with county policy.

Employees subject to specific sign-in procedures must follow those procedures.

| | |
|---|---|
| Issued: | _____ |
| Revised: | 10/01/97 |
| Revised: | 10/17/02 |
| Revised: | 03/12/11 |
| Revised: | 05/01/16 |

Section 7. **OFFICE ADMINISTRATION**

7-4 **Payroll Procedures**
7-4-2 **Check Issuance Procedure**

All paychecks will be picked up by assigned personnel only and delivered to each work site.

To re-route check delivery on a permanent basis, an employee should send a Change of Status form to the Payroll Unit. Otherwise checks will be delivered to assigned locations.

Payroll personnel will not accept any temporary requests for re-routing checks. If an employee needs someone to pick up her/his check, i.e., a co-worker or non-employee, prior written authorization submitted at least 24 hours in advance to the Payroll Unit is required, and the person authorized to pick up the check must sign for the check.

Contact the Payroll Unit for further clarification.

| Issued: | |
|---|---|
| Revised: | 10/01/97 |
| Revised: | 10/17/02 |
| Revised: | 03/12/11 |
| Revised: | 05/01/16 |

Section 7. **OFFICE ADMINISTRATION**

7-5 **Vehicle Use**
7-5-1 **County Vehicle Use Policy and Procedure**

I.      Purpose

        The purpose of this policy is to ensure the use, maintenance, disposal and replacement of County
        vehicles consistent with the interest and operations of the Law Office.

II.     Assignment

        A.      The Public Defender/designee may assign County vehicles to individual employees for their
                use in carrying out the business of the Law Office.  Other use of these vehicles is governed
                by this policy, Public Defender directives, County policies, and Internal Revenue Service
                regulations.

        B.      The Public Defender/designee may assign County vehicles for limited fleet use by
                employees consistent with business necessity and the operational needs of the Law
                Office.

        C.      A Vehicle Fleet Coordinator will assign vehicles in fleet to employees consistent with
                this policy.

        D.      Any employee using a fleet vehicle must submit a Vehicle Request Reservation Form to the
                Vehicle Fleet Coordinator.

        E.      Only employees of the Law Office who possess a valid Driver's License are to operate
                County vehicles.  County vehicles shall be operated in a safe and prudent manner.

III.    Maintenance

        A.      The Vehicle Fleet Coordinator will maintain a record file on each County vehicle assigned
                to the Law Office.

        B.      Ordinary maintenance of vehicles assigned to individual employees will be the responsibility
                of the employee/operator.  Operators will obtain reimbursement for out-of-pocket
                maintenance expenses through the Deputy of Financial Affairs. Ordinary maintenance
                costing more than $250 must receive prior approval from the Deputy of Financial Affairs.

C.      Ordinary maintenance of vehicles assigned to fleet use will be the responsibility of the Vehicle Fleet Coordinator.

D.      The Vehicle Fleet Coordinator may require periodic reports from operators of County vehicles to ascertain the maintenance and condition of the vehicles.

E.      The Deputy of Financial Affairs is responsible for obtaining and maintaining gas and commercial oil cards, registration, license plates, stickers and insurance cards for all County vehicles assigned to the Law Office.

F.      Operators are responsible for checking and maintaining vehicle fluid levels and for emissions testing.

IV.    Fueling

A.      Operators of County vehicles will use County-provided gas cards and/or commercial oil company credit cards obtainable through the Vehicle Fleet Coordinator for fueling County vehicles. If a County-supplied gas card or commercial oil company credit card is not available for fueling purposes, the operator may fuel up the vehicle at his/her expense and seek reimbursement from the Chief of Administrative Services. The request for reimbursement must be supported by receipts.

B.      It is the responsibility of the last operator to return County fleet vehicles to the Vehicle Fleet Coordinator with a full tank of gas.

V.    Accidents, Thefts,  Losses, Mechanical Problems and Malfunctions

A.      Operators involved in accidents, thefts, losses, mechanical problems, malfunctions or in any other mishaps involving a County vehicle will report these incidents immediately or as soon as possible to the Vehicle Fleet Coordinator and the Deputy of Financial Affairs.  A Vehicle Inspection Form shall be submitted to the Vehicle Fleet Coordinator to report mechanical problems, damage to the vehicle, or other malfunctions.

B.      The operator will follow any verbal notification of the incident with a written memorandum to the Vehicle Fleet Coordinator and to the Deputy of Financial Affairs as soon as possible. The operator will obtain and submit available police reports as soon as possible, as well as a Secretary of State Accident Report, if needed.

C.      Additional reports may be required under existing County policies or regulations, as instructed by the Deputy of Financial Affairs.

D.      Refer to 4-3, Notification of Work-related Injuries, as needed.

VI.     Tickets

All traffic/parking tickets will be the responsibility of the vehicle operator.

VII.    Smoking

Smoking is prohibited in County vehicles.

VIII.   Emergencies

A.      In the event the vehicle becomes inoperable during normal working hours, the operator should contact the Vehicle Fleet Coordinator for guidance.

B.      If the situation is such that a tow is needed and the Vehicle Fleet Coordinator cannot be reached, the employee/operator should use his or her own personal credit card or check. The Law Office will reimburse the employee for reasonable costs incurred in connection with the vehicle's removal. All requests for reimbursement must be supported by receipts and submitted to the Vehicle Fleet Coordinator, who will in turn submit them to the Deputy of Financial Affairs.

| | |
|---|---|
| Issued: | |
| Revised: | 10/17/02 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

## Section 8. **PROFESSIONAL DEVELOPMENT**

### 8-1 **Employee Training**

The Law Office strives to keep its employees trained in areas that affect their job responsibilities. To that end, the Law Office provides training to enhance employee performance. Additionally, all attorneys are provided with the opportunity to attend training that meets the mandatory continuing legal education requirements of the Minimum Continuing Legal Education Board of the Supreme Court of Illinois.

Training opportunities are distributed through the Cook County E-Mail system. Further information may be available from the Professional Development Division.

| | |
|---|---|
| Issued: | _____ |
| Revised: | 10/01/99 |
| Revised: | 10/17/02 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

Section 9.  **CASE MANAGEMENT**

9-1 **Expert Witness Requests** _____

Attorneys seeking to procure the services of expert witnesses shall proceed as follows:

I.        Procedures and Processing

A .    Discuss with a supervisor or chief the need for and the identification of the appropriate expert(s). Confer with the expert as to the terms of the employment and ask the expert if the expert performs services for government at a reduced rate.  Obtain the Curriculum Vitae of the expert.  Once terms have been agreed to, and if the services will exceed $500, complete the Engagement Agreement and deliver it (by e-mail, mail, investigator, etc.) to the expert  to sign and return to the attorney.

B.     Complete the Request for Expert Witness form.    Include the hourly rate, the estimated number of hours a n d  total anticipated fee. The form should include the name of the case, case number, charges and description of the case. Describe the services needed and procedures the expert must follow. State the purpose of the expert

C.     Submit the completed original Request for Expert Witness form, Curriculum Vitae and completed original Engagement Agreement (if services will exceed $500),  t o the supervisor.  The supervisor or chief approves the request or returns the form to the attorney for corrections.  The form is then forwarded to the First Assistant or designee. The original request should be retained by the Chief or supervisor and a copy should be retained by the attorney in his or her file

D.     Once the Expert begins work on the case, it is the attorney's responsibility to ensure that the Expert's fees do not exceed the limitations set in the Request for Expert Witness form. Should the attorney anticipate that the Expert's work will exceed the limitations, then the attorney shall complete a new Request for Expert Witness form and a new Engagement Agreement for the Expert to sign

II.     Interim Payments

Expert witnesses working on an hourly basis must bill on a bi-monthly basis, according to the Engagement Agreement.  Therefore, the attorney must urge the expert to submit interim invoices on a bi-monthly basis.  A partial itemized invoice (originals only) must be submitted by the attorney to his/her Chief with a completed Request for Interim Payment form, along with the original approved Request for Expert Witness form.  The Chief then forwards these documents to the First Assistant or designee. If the expert is still working on the case by the end of the fiscal year (November 30) and has not submitted any recent interim invoices, then the attorney must ask the expert to submit a partial itemized invoice for an Interim Payment

III.    Final Payment

IV.     Upon completion of the work, an attorney should sign the Request for Expert Witness form acknowledging the work is completed and attaching a final itemized invoice (originals only). This form should be submitted to the Chief, who then forwards it to the First Assistant or designee.

| | |
|---|---|
| Issued: | |
| Revised: | 10/01/97 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

Section 9. **CASE MANAGEMENT**

**9-2    File Maintenance**
**9-2-1    Criminal, Juvenile, and Civil File Maintenance Standards**

I.    All felony, continued or special circumstance, misdemeanor, juvenile and civil files MUST contain the following information in addition to documents obtained in the course of discovery:

   A.    Client Interview Sheet - If an interview has already taken place at the preliminary hearing stage, an assistant public defender is still responsible for conducting his/her own interview.

   B.    A copy of all Investigative Requests and corresponding responses from the investigator.

   C.    Current Half-Sheet - Be detailed.  List what discovery has been tendered and what is still due.  No more "B/A Status" (By Agreement status). All conferences and phone contacts with clients and their families should be noted on the half sheet.

   D.    Attorney Assessment of the Case - This will be as detailed as the case is involved and should be updated as needed.

   E.    Jail or Detention Center Visit Statement - List all visits to the jail or detention center and a brief summary of what happened.  This may be part of the Half-Sheet if desired.

   F.    Client's Current Address and Phone Number - If the client is incarcerated, obtain the client's resident number and jail location.  If the client is not in custody, obtain the client's address, phone number, and the same for a relative or friend. If the client is on bond and has no phone, list the address and phone number of a contact person.

   G.    Copy of Complaint/Information/Indictment.

   H.    Attorney Name on Outside of File.

   I.    Judge's Name or Courtroom on Outside of File.

   J.    File dividers as necessary.

II.      Disposed files should be turned over to designated staff in accordance with the Disposal of Closed Case Files Policy (9-2-2) so that they may be preserved for future reference. UNDER NO CIRCUMSTANCES SHOULD A DISPOSED FILE BE RETAINED BY AN ASSISTANT PUBLIC DEFENDER

III.     When outside counsel substitutes for an assistant public defender, please make photocopies of the file's contents for the substituting attorney. If the file is large, the substituting attorney will need to engage a copy service to copy the file for him or her. The Law Office retains originals of all documents in the file. If the Law Office's file contains photographs, contact the Investigations Division to make reproductions.

IV.      For details on how to retrieve a closed case file from the warehouse, refer to the Guidelines for Warehouse File Retrieval.

| | |
|---|---|
| Issued: | |
| Revised: | 10/01/97 |
| Revised: | 10/17/02 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

Section 9. **CASE MANAGEMENT**

9-2 **File Maintenance**
9-2-2 **Disposal of Closed Case Files**

For any disposed case, the attorney of record shall clearly write on the outside of the manila file folder the file destruction date and the following information, as may be applicable.

**TYPE OF CASE FILE FOLDER**  **INFORMATION PLACED ON**

Adult misdemeanor and felony   Charge(s)
(except murder cases)   Finding or verdict
   Sentence

Adult misdemeanor and felony   Expiration date of the *Thiem* Order
Not guilty by reason of insanity

Appeals   DOB of youngest child
(Civil)

Appeals   Charge(s) convicted of
(criminal)   If murder, indicate "murder case"
   DOB of client
   Sentence

Civil   Names of all minors
   DOB of youngest child

Juvenile   Charge(s)
(except murder cases)   Finding
   DOB of client

| | |
|---|---|
| Habeas Corpus | Charge(s) |
| | Sentence |
| | |
| Murder | Indicate "murder case" |
| | Finding / verdict |
| | DOB of client |
| | Sentence |
| | |
| Post Conviction | Charge(s)convicted of |
| | If murder, indicate "murder case" |
| | DOB of client |
| | |
| Public Defender withdrawn | Date of withdrawal |

The attorney assigned to the case will make required applicable entries conspicuously on the front of case file folder. The attorney will make necessary statistical entries reflecting closure. The attorney will turn over to the designated clerk all disposed files within 10 business days of closure.

The designated clerk will return to the attorney any case file folders that do not comply with this procedure.

| | |
|---|---|
| Issued: | _____ |
| Revised: | 10/01/97 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

## Section 9. CASE MANAGEMENT

### 9-2 File Maintenance
### 9-2-3 Guidelines for Warehouse File Retrieval

In order to expedite file retrieval from the warehouse, employees should completely fill out the Disposed File Request Form and submit to their supervisor or chief.

| | |
|---|---|
| Issued: | |
| Revised: | 10/01/97 |
| Revised: | 10/17/02 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

Section 9. **CASE MANAGEMENT**

9-3  **Request for Law Office Interpreter**

To request the use of Law Office interpreter:

An Assistant Public Defender should submit an Office Interpreter Request form to the support staff supervisor. The support staff supervisor will date stamp the Request form on the day it is received. Request forms will be given to the interpreter on the next business day or as soon as possible after receipt of request.

The interpreter will notify the attorney as soon as he/she is in receipt of the request. (Same day if possible; if not, as soon as possible.) The interpreter will advise the attorney of available dates. A copy of the Request form will be returned to the support staff supervisor with the date that the Interpreter is scheduled to meet with the attorney.

Once the request has been completed, the interpreter will return the Request form to the support staff supervisor. The support staff supervisor will file each completed Request form in a binder.

Emergency Requests: Emergency requests may be called in to the support staff supervisor. An interpreter will be assigned. A written Request form must follow within forty-eight (48) hours of request.

| | |
|---|---|
| Issued: | |
| Revised: | 10/01/97 |
| Revised: | 10/17/02 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

Section 9. **CASE MANAGEMENT**

9-4 **Notice of Appeal Procedures**

I.      It is the responsibility of the assistant public defender who represented the client at trial or hearing to perfect the client's appeal.

II.     If, after consultation with the client, the client indicates the desire to appeal, the assistant public defender will prepare a complete and accurate notice of appeal, and will list at the bottom of the form (order for transcript) all relevant court dates. However, if after being informed of the right to appeal, a client chooses not to do so, that fact should be noted in the Law Office case file.

III.    The assistant public defender will present the order for transcript to the trial court for signature. [N.B.: the trial court's signature is needed only to obtain a transcript without cost to the Public Defender. The trial court is not being asked to approve or authorize an appeal: the client has an absolute right to appeal from any final judgment.]

IV.     The assistant public defender has the responsibility to file the notice of appeal with the Clerk of the Circuit Court.  Although the notice can be filed either with the clerk in the individual courtroom or in the general offices of the Clerk of the Circuit Court, the safer path is to file the notice in the offices of the Clerk of the Circuit Court.  The assistant public defender should retain a stamped copy of the notice of appeal in his/her file, and should give or send a copy of the stamped notice to the client. A note should be made on the file/ half-sheet that a notice of appeal was filed.

V.      To be timely, the notice of appeal must be filed within 30 days of the final judgment, which usually is the imposition of sentence, or the denial of a motion to reconsider the sentence.

VI.     Once the notice of appeal is filed, either send a copy of the stamped notice to the Office of the State Appellate Defender (OSAD) at 203 North LaSalle Street, 24th Floor, Chicago, IL 60601, or fax the stamped notice to OSAD at fax number 312-814-8176. Whether mailed or faxed, send the notice to the attention of the Director of Paralegal Department at OSAD.  Even if the Public Defender ultimately represents the client on appeal, send of fax the notice to OSAD since its paralegals review all notices of appeal filed in Cook County.

VII.    If the assistant public defender specifically wishes to have the Public Defender handle the appeal, approval should be obtained from the Chief of that Division.  The notice of appeal should make it clear that the Public Defender seeks to represent the client on appeal, and notice shall be given to the Chief of the Legal Resources Division (LRD) that the particular appeal will be handled by the Public Defender.

|  |  |
|---|---|
| Issued: | |
| Revised: | 10/01/97 |
| Revised: | 10/17/02 |
| Revised: | 08/12/11 |
| Revised: | 05/01/16 |

VIII.    Once the above steps are taken, responsibility for the processing of the appeal will shift to OSAD, or as indicated, LRD.

IX.    Private Attorney Cases
Whenever the Law Office is notified that the Public Defender has been appointed to an appeal on a case not previously handled by the Law Office, the person receiving such notification will immediately inform the attorney division chief of that fact. The attorney division chief will then assign an assistant public defender to take whatever steps that are necessary to perfect this appeal.

Issued: _____
Revised:   05/01/16

Section 9.  **CASE MANAGEMENT**

**9-5 Holiday Court**

For Holiday Court, the Collective Bargaining Agreement will be applicable.

Issued: _____
Revised:   05/01/16

Section 9.  **CASE MANAGEMENT**

**9-6  Conflict of Interest (Trial)** _____

I.      The Public Defender of Cook County, through the assistant public defenders, will seek leave to withdraw as counsel and move for the appointment of counsel other than the Public Defender in the following circumstances:

   A.      When a client has filed a lawsuit in any court naming as a defendant the Public Defender of Cook County or any assistant public defender;

   B.      When a client is accused of an offense where the complaining witness or victim of the offense is an employee of the Law Office of the Public Defender or a member of the immediate family or household of that employee;

   C.      When a client agrees to become a witness for the State against another client of this Law Office  or to provide the State with information inimical to the interests of another client of this Law Office;

   D.      In any case where a client makes a formal claim charging the Public Defender or an assistants with illegal, immoral or unethical conduct;

   E.      When the Cook County Public Defender, including the MDD unit, has been appointed to represent the first and second defendants in a case and a court appoints the Public Defender to represent an additional defendant in the same case;

   F.      When the client is a member of the immediate family or household of an employee of the Law Office.

   G.      When the Illinois Rules of Professional Conduct would require withdrawal.

II.   Recognizing that the request to withdraw may not be allowed, all motions must be in writing and detail the basis for the conflict of interest.  ALL motions to withdraw as counsel must be reviewed by an immediate supervisor.

Section 9.  **CASE MANAGEMENT**

9-7  **Unauthorized Appointment of the Public Defender - - Special Situations**

I.      Purpose

        The purpose of this policy is to clarify the Public Defender's position concerning the unauthorized appointment of staff, facilities, equipment, or resources by the judiciary.

II.     Policy

        It shall be the policy of the Public Defender to object to any judicial order appointing this Office, its personnel, facilities, or equipment, if such appointment falls outside the scope of the Public Defender Act, 55 ILCS 5/3-4006.

        Application of this policy includes, but is not limited to, the following situations:

        A.      Appointment or continued appointment of the Public Defender as counsel or co-counsel when the accused has retained an attorney;

        B.      Use of the Public Defender attorneys, investigators, case workers, sentencing advocates, or support staff in cases where the Public Defender is not acting as attorney of record on behalf of the accused;

        C.      Orders directing that the Public Defender provide space or the use of equipment or resources when the Public Defender is not acting as attorney of record on behalf of the accused;

        D.      Appointment to cases not covered under the Public Defender Act, such as civil contempt, when these proceedings arise independently of a pre-existing Public Defender appointment.

        This policy does not apply to appointments of the Public Defender as stand-by counsel as authorized by case law.  *People v. Gibson*, 136 Ill. 2d 362, 556 N.E.2d 226 (1990).

III.    Procedures

        A.      Objection: Assistant public defenders shall object to any judicial order in violation of this policy.  The objection shall be accompanied or supplemented by a written Objection or Motion to Withdraw with a supporting brief.

        B.      Notification:

                1.      Assistant public defenders shall notify their immediate supervisor at once of any unauthorized appointment by the judiciary.

2.   The supervisor will direct a timely memorandum to the proper division chief, director, and to the First Assistant advising them of the unauthorized appointment.

C.   Appellate/Extraordinary Remedies:  The First Assistant may direct Public Defender personnel to prosecute a writ of prohibition, mandamus, supervisory order or any other remedy deemed appropriate, in order to implement this policy.

IV.   Citations

See the following:

A.   Public Defender Act, 55 ILCS 5/3-4006.

B.   *People v. Banks*, 121 Ill. 2d 36 (1987)

C.   *People v. Spreitzer*, 123 Ill. 2d 1 (1988)

D.   *People v. Hardin,* 217 Ill. 2d 289 (2005)

E.   *Maloney v. Bower*, 113 Ill. 2d 473, 498 N.E.2d 1102 (1986).

F.   *People v. Gibson*, 136 Ill. 2d 362, 556 N.E.2d 226 (1990).

G.   *McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944, 79 L.Ed.2d 122 (1984).

H.   *Tedder v. Fairman*, 92 Ill. 2d 216, 441 N.E.2d 311 (1982).

I.   *City of Danville v. Clark*, 63 Ill. 2d 408, 348 N.E.2d 844 (1976).

J.   *Burnette v. Terrell*, 232 Ill.2d 522, 905 N.E.2d 816 (2009).

<u>Section 9.</u>  **CASE MANAGEMENT**

**9-8  HIV/AIDS Confidentiality** _____

I.        Underlying Principles

The Illinois AIDS Confidentiality Act (410 ILCS 305/1, *et seq*.)  provides that any person who
knows of another person's HIV status may not disclose that information without the express
written consent of that individual.  It is the policy of the Law Office  to comply with the letter and
spirit of the AIDS Confidentiality Act.  At the same time, the Law Office recognizes that there are
circumstances in which a client of the Law Office may disclose his or her HIV status to the Law
Office and there may be circumstances in which it is in a client's best interest to disclose that
status to the court or to opposing counsel.  The goal of this policy is to ensure that a client's rights
are respected in this important matter and to protect the Law Office and its employees against an
unauthorized disclosure.

II.       General Policy

It is the policy of the Law Office not to disclose the HIV status of any person without the written
consent of that individual.

III.      When Consent for Disclosure Should be Obtained

If an individual discloses his or her HIV status to an employee of the Law Office, it is appropriate
to engage the client in a discussion of the relevance of that status to the individual's case.  If the
matter is, or might later be, relevant, then and only then is it appropriate to ask the individual to
authorize disclosure of his or her status.  The attached consent forms may be used for this purpose.
The individual may choose to allow disclosure only within the Law Office reserving for later the
decision about whether to authorize a disclosure to the court or to opposing counsel, or may
authorize disclosure both within the Law Office  and to court or opposing counsel.

IV.      When Consent for Disclosure Has Been Obtained

A.       Notation in Law Office  files and disclosure to other employees of the Public
          Defender When a client has authorized disclosure within the Law Office, staff should
           note the individual's status in confidential case files and may discuss the client's
          status with other staff who are directly involved with the client's defense.
B.       Disclosure of health status in the courtroom and to opposing counsel
          A client's HIV/AIDS status should not be disclosed in open court.  If an individual's
          HIV/AIDS status is relevant to his or her case, and a written consent has been obtained,
          then the status may be disclosed in side bar, in chambers or in sealed pleadings.  If it is
          necessary to refer to the individual's health problems in open court, do so without

disclosing the nature of those health problems, referring instead, for example, to a "serious health condition requiring special medical care."

The Law Office recognizes that there may be occasions, usually at sentencing, which require a departure from the above policy. If the **only** way a client's HIV/AIDS status can be communicated to the court is an open court disclosure, the client's status may be disclosed **only after a full discussion of the advantages and disadvantages of the proposed disclosure and only with his/her written consent for an open court disclosure.**

This policy also applies to those cases in which a client's HIV/AIDS status has been disclosed by law enforcement, court personnel, or others with or without the client's consent.

Clients having concerns regarding HIV/AIDS status disclosures by another agency, may be referred to the AIDS Legal Council of Chicago at (312) 427-8990 or any other agency dealing with the rights of persons with HIV/AIDS.

V.     When Consent for Disclosure Has Not Been Obtained

If a client refuses to sign the consent allowing disclosure to other employees of the Law Office, the client's HIV/AIDS status shall not be disclosed in any written or oral form. It may be referred to as a "*serious health condition*" in notes. The notes shall reflect, without referring to HIV/AIDS, that the client declined to sign an authorization concerning disclosure of health issues after a full discussion.

VI.    Violations

Violations of this policy may subject the employee to personal civil liability for breach of the AIDS Confidentiality Act. The Act provides for (1) liquidated damages or actual damages for each negligent disclosure, and (2) increased liquidated damages or actual damages for each intentional disclosure whichever is greater, as well as reasonable attorney fees. Violations of this policy may also subject the employee to appropriate discipline by the Law Office.

Section 9.  **CASE MANAGEMENT**

9-9  **Representation of Contempt Clients**

I.      Upon appointment to any client charged with criminal contempt, the assistant public defender assigned must inform his/her supervisor the same day.

II.      For direct criminal contempt, if punishment is summarily imposed on a client represented by the Public Defender, the assistant public defender must discuss options with both the supervisor and the client, including whether to file a notice of appeal. [Practice note re direct contempt: Judges will occasionally hold a client in direct contempt, but delay imposing punishment for several hours. The client will be taken into custody and given time to reflect on his/her actions. An assistant public defender may use that window of opportunity to convince his/her client to apologize and purge the contempt.]

III.      For indirect criminal contempt (or direct contempt where punishment is not summarily imposed), if the client is held in custody pending resolution, an assistant public defender must immediately consult with the client and the supervisor and determine if a motion to set bail or reconsider bail should be filed.

IV.      If a motion to set bail or reconsider bail is filed, it must be in writing and must comply with the requirements of Illinois Supreme Court Rule 604(c). (Per Rule 604(c), all bond motions must be verified and provide "(i) the defendant's financial condition; (ii his or her residence addresses and employment history for the past 10 years; (iii) his or her occupation and the name and address of his or her employer, if he or she is employed, or his or her school, if he or she is in school; (iv) his or her family situation; and (v) any prior criminal record and any other relevant facts.")

V.      If bail is not reduced and/or the client remains in jail, an assistant public defender must immediately consult with the client, the supervisor, and the Chief of the Legal Resources Division, about whether to appeal from the bail ruling and continued hold of the client in the jail. If it is determined that an appeal should be filed, all appropriate transcripts and documents must be prepared and sent to the Chief of the Legal Resources Division.

VI.      If an appeal is filed and relief is not obtained, an assistant public defender must consult with the client and the supervisor on additional options to pursue, including but not limited to a renewed motion to reduce bail and further appeals.

<u>Section 9.</u>  **CASE MANAGEMENT**

**9-10  State-Issued Protective Orders Affecting Discovery**

In cases involving alleged sex with children or pornography involving children, the State may insist that an assistant public defender sign a protective order before the State will tender, as part of discovery, photos or victim sensitive interviews (VSIs). These protective orders require defense counsel to agree not to make any copies of the discovery or show it to anyone (even an expert, unless there is permission from the court), and to return all of the sensitive discovery to the State at the end of the case. In addition, the protective orders require defense counsel to sign "under penalty of perjury." The Public Defender has determined that the following actions should be taken in response to this type of demand by the State:

I.      Assistant public defenders must object, on the record and in writing. Assistant public defenders should point out to the court that they will obey all judicial orders, that they are officers of the court, that defense counsel has a right to discovery under the Supreme Court Rules, and that the protective order improperly assumes that assistant public defenders will misuse the discovery that is tendered. Assistant public defenders should ask the judge to order the State to tender the relevant VSIs and other discovery without signing the State's protective order. Failing that, assistant public defenders should ask the judge to rule that they <u>must</u> sign or else forfeit receipt of the discovery.

II.     If the judge so rules, despite an assistant public defender's objection on the record, the assistant public defender is to sign the protective order so as to be able to use the discovery and prepare for trial. If the client loses at trial, the assistant public defender should learn whether the client wishes to appeal. If he/she does, the assistant public defender should have the notice of appeal ready on the day of sentencing (or the day the motion to reconsider sentence is heard, or, in Civil cases, the day of the disposition).

III.    Once the final sentence (or disposition) is imposed, the State will request its discovery back, but the assistant public defender should not tender it to the State. The assistant public defender should show the judge the notice of appeal and inform him/her that the appellate court will need to have the VSIs and other sensitive discovery in order to review the case. The assistant public defender should ask that the discovery be <u>impounded</u> for appellate review. If, for any reason, the judge refuses, the assistant public defender should make a record that details exactly what was contained in the discovery, and exactly what the appellate court is being denied. This will enable appellate counsel to ask the appellate court for an order demanding that the State submit the missing evidence that was used to convict the client. (This policy only applies if the client goes to trial and loses.)

IV.     In all cases where an assistant public defender signs a protective order, a transcript of the hearing, reflecting the above objection and the judge's ruling, should be ordered. The transcripts may be needed to support a supervisory petition that the Public Defender may file with the Illinois Supreme Court, asking that this practice be stopped. Assistant public defenders should send those transcripts to the First Assistant and Chief of Staff.

Received: 08/12/11
Revised: 05/01/16

## Section 10  MISCELLANEOUS

### 10.1  Compensatory Time

It is the policy of the Law Office that assignments be completed within each employee's regular work day.  However, if it becomes necessary for an employee to work additional hours, non-union members, who are not deemed exempt employees under the Fair Labor Standards Act, may earn compensatory time.  Prior approval from an employee's supervisor is required in order for an employee to earn compensatory time.  Additional time worked (in excess of 40 hours per week) shall be paid in compensatory time at the rate of 1.5 hours compensatory time for each 1 hour worked in excess of 40 hours in a week.

A work week begins at 12:00 a.m. on Sunday and ends at 11:59 p.m. on Saturday.

For members of AFSCME Local 1767, the terms of the Collective Bargaining Agreement will control.

For members of AFSCME Local 3696, the terms of the Collective Bargaining Agreement will control.

For members of AFSCME Local 3315, compensatory time will not be approved, as assistant public defenders' hours shall be commensurate with their professional responsibility. However, for work in Holiday Court, the terms of the Collective Bargaining Agreement will control.

The maximum number of compensatory time accumulation is 40 hours.

Issued: _____
Revised:   05/01/16

## Section 10  **MISCELLANEOUS**

10-2  **County of Cook Regulations**

The County of Cook Rules and Regulations issued by the Bureau of Human Resources apply to all personnel of the Law Office.  Where there is a conflict between a Collective Bargaining Agreement and the Rules, the terms of the CBA shall control.

These Rules are available on ccnet.