UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEBRA GASSMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-cv-01279 |
| | ) | |
| v. | ) | Honorable Joan H. Lefkow |
| | ) | |
| COOK COUNTY and SHARONE R. MITCHELL, JR., solely in his Official Capacity as PUBLIC DEFENDER OF COOK COUNTY, | ) ) ) ) | |
| | ) | |
| Defendants. | | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants Cook County and Sharone R. Mitchell, Jr., Public Defender of Cook County, ("Public Defender") (collectively "Defendants"), move to dismiss Plaintiff Debra Gassman's ("Gassman") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), stating as follows:

**INTRODUCTION**

In her Complaint, Plaintiff alleges that the Public Defender violated her First Amendment rights and that Cook County should indemnify the Public Defender. Specifically, Plaintiff alleges her First Amendment rights were violated by the Public Defender by a directive contained in a letter issued to Plaintiff about a personal photograph she placed in a common area of her workplace and because she claims the 2016 Public Defender's Employee Manual ("Manual") constitute a prior restraint on her speech.

This case should be dismissed because the Public Defender's directive to remove Plaintiff's photograph from the employee mailbox while allowing her to display it outside of public view in her office was a reasonable, permitted content specific regulation of these non-public forums which was not directed at the viewpoint Plaintiff alleges she intended to express.

1

Alternatively, the *Pickering* balancing test demonstrates that the Public Defender's operational interests outweigh Plaintiff's speech interests in displaying her personal photograph in the workplace. Lastly, the Manual is not a prior restraint on Plaintiff's speech because Plaintiff has not plausibly pled any intent to make any protected speech.

## BACKGROUND FACTS

Plaintiff, an Assistant Public Defender, alleges the Public Defender[1] violated her First Amendment Rights in three manners: First, on or about October 10, 2023, Plaintiff took a photograph which she displayed on her office wall for about 20 years, and placed it on the employee mailboxes in Public Defender's Office inside of the Skokie Courthouse. C. ¶ 2, 20, 29. The photo depicts Plaintiff holding an assault rifle standing in front of an Israeli flag. C. Exhibit ("Ex.") 1. Plaintiff's supervisor removed the photo from the employee mailboxes and returned it to Plaintiff who continues to display it in her office. C. ¶ 32.

On October 20, 2023, Mitchell sent Plaintiff a letter explaining the photograph was removed from the employee mailbox area because "displays of firearms can be perceived as threatening" and, therefore, runs afoul of Cook County's Workplace Violence Policy. C. at Ex. 2. This Policy requires the Public Defender to "provide a work environment that is free from violence or threats of violence against employees, clients and guests." C., Ex. 3 §6-2-6(I). The Manual defines workplace violence to include "actual or potential assault, battery, harassment, intimidation, threats or similar actions…which occur in a Law Office worksite." C., Ex. C §6-2-6(II). It tasks all Public Defender employees with maintaining a work environment that promotes professionalism. C., Ex. C §6-2-6(III). In his letter, Mitchell explained that "posting a

---

[1] Plaintiff's First Amendment Rights violations in Count I do not specify who it is directed against. However, because Cook County is not Plaintiff's employer and is named in Count II for indemnification, Defendants assume Count I is only against the Public Defender.

2

photograph of an employee holding a firearm is inappropriate in the workforce," and, as such, is inconsistent with this Policy; he therefore directed Plaintiff to "remove any firearm related picture from public view." Mitchell explicitly says that the letter is non-disciplinary and that he will not seek discipline against Plaintiff. *Id.*; *cf.* ¶¶ 33, 50.

Second, on October 30, 2023, Cook County Public Defender Deputy Parle Roe-Taylor briefly removed the photograph from within Plaintiff's office due to a concern that it could be seen by others. C. ¶¶ 34, 35, 37. The photograph was returned to Plaintiff and she has continued to display the photograph in her office. C. ¶¶ 20, 49-50.

Third, Plaintiff alleges that two portions of the Manual constitute prior restraint on her speech: (a) Section 6-3-2 (Public Relations, Media) forbids employees of the Public Defender from "initiating contact with the media regarding policies, procedures or the Office's position on general matters, or regarding a particular case," C. ¶¶ 54-55, Ex. 3, page 65, and (b) Section 6-3-3 (Public Relations, Social Media) which requires employees of the Public Defenders (who identify themselves as such) to be respectful. C. ¶ 56, Ex. 3, page 68. Plaintiff alleges these Sections of the Manual prohibit her from speaking out concerning the Public Defender's "internal policies to prohibit her from displaying the Photo." C. ¶ 57.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of complaints that do not state an actionable claim. To survive dismissal under 12(b)(6), a complaint must first comply with Rule 8(a) by providing "a short and plain statement," that establishes the grounds for the court's jurisdiction and shows "ground for his entitlement of relief [with] more than labels and conclusions [rather than] naked assertions devoiced of further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted). "[A] complaint will not

3

suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2008) (citing *Bell Atlantic*, 550 U.S. at 557). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim," however, "are not entitled to [the] presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Additionally, Plaintiff's factual allegations must plausibly suggest that the plaintiff is entitled to relief, "raising that possibility above a speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). Facial plausibility requires pleading "factual context that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Farhan v. 2715 NMA LLC*, 2024 U.S. Dist. LEXIS 47656 **5-6 (N.D. Ill.). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678 (internal citation omitted).

## ARGUMENT

### I. *Monell* liability.

In order to state a First Amendment Violation under Section 1983, Plaintiff must first plausibly plead: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law'; or (3) an allegation that the constitutional injury was caused by a person with 'final policymaking authority.'" *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995).

Plaintiff alleges that the Public Defender has final policy making authority, so his directive to remove the photograph from the mailboxes *could* plausibly plead a violation of her

4

First Amendment rights under *Monell*. C. ¶ 10; *Brombolich v. City of Collinsville,* 2017 U.S. Dist. LEXIS 110610, *12-13 (S.D. Ill.). Deputy Roe-Taylor's removal of the photograph was also premised on this letter, even if mistaken. Plaintiff also alleges that Defendant's Manuel continues contains an express policy of restraining certain speech prospectively, which also could plausibly plead a violation of her First Amendment rights under *Monell*. C. ¶¶ 51-59. Although Plaintiff has plausibly pled liability under *Monell*, her First Amendment claims are not plausibly pled.

II. **Plaintiff's speech was regulated in a reasonable, content-specific matter as is permitted in nonpublic forums.**

Plaintiff alleges that her photograph is protected speech as it reflects a matter of public concern C. ¶¶ 39-41. However, because Plaintiff's photograph is not traditional speech—*e.g.* speech made by a public employee critical of a public employer—forum analysis may be employed to determine the scope of Plaintiff's rights to speech in the workplace. *See, e.g., Salaita v. Kennedy,* 118 F. Supp. 3d 1068, 1081 (N.D. Ill. 2015)*; Burnham v. Ianni,* 119 F.3d 668, 675 (8th Cir. 1997).[2]

The extent to which government can regulate speech without running afoul of the First Amendment depends on the nature of the space. *Brandt v. Bd. of Educ. of Chi.*, 326 F. Supp. 2d 916, 920-921 (N.D. Ill. 2004). Spaces are classified as either traditional public forum, a designated or limited public forum, or a non-public forum. *Forgue v. City of Chi.*, 873 F. 3d 962, 966 (7th Cir. 2017). This classification turns on an analysis of the "policy and practice of the government" and "the nature of the property and its compatibility with expressive activity."

---

[2] The analysis employed by the Eighth Circuit is cited as persuasive authority because it is the most closely aligned case factually and legally to the allegations in this case located by defense counsel.

*Choose Life Ill. v. White,* 547 F. 3d 853, 865 (7th Cir. 2008); accord *John K. Maciver Inst. for Pub. Policy, Inc. v. Evers*, 994 F.3d 602, 610 (7th Cir. 2021).

Traditional public forums are "locations or channels of communication that the government opens for trade by the public for expressive activity" and other places with a long history of being devoted to assembly and debate such as public streets or parks. *Kohlman v. Vill. Of Midlothian*, 2009 U.S. Dist. LEXIS 41317 *13 (N.D. Ill.) Designated public forums are locations "the state opened for use by the public as a place for expressive activity." *Id.* Nonpublic property "is not by tradition or designation a forum for public communication." *Id.* Both the employee mailboxes and Plaintiff's office are non-public forums.

      A. <u>Employee mailboxes and Plaintiff's office are non-public forums.</u>

The employee mailboxes are most akin to a nonpublic forum because they are not traditional places for public communication and have not been designated as such. *Kohlman, supra; see also U.S. Postal Serv. v. Council of Greenburgh Civic Assn.,* 453 U.S. 114, 132 (1981) (finding employee mailboxes are not traditional public forums). Similarly, Plaintiff's office in the Skokie Courthouse is also a nonpublic forum because it is not a space open for public communication. *National Anti-Drug Coalition, Inc. v. Bolger,* 737 F. 2d 717, 721 (7th Cir. 1984)("*Bolger*"). The Seventh Circuit has held that the government's intent for the public space controls over how the forum is used by speakers. *U.S. v. Krahenbuhl*, 88 F.4th 678, 684 (7th Cir. 2023). It has also held that the more restrictive the government is about access to it property, "the more likely the property will be considered a nonpublic forum." *DeBoer v. Village of Oak Park*, 267 F.3d 558, 566 (7th Cir. 2001).

Although Plaintiff alleges that employees are allowed to display "holiday decorations, photographs, art and cards" on the employee mailboxes, permitting limited discourse is not

6

evidence of the Public Defender "intentionally opening up of [these] nontraditional forum[s] for public discourse." C. ¶ 30; *Cornelius v. NAACP Legal Defense & Educational Fund*, 473 U.S. 788, 802 (1985); *Mnyofu v. Bd. of Educ.*, 2007 U.S. Dist. LEXIS 31589 * 27 (N.D. Ill.). Similarly, the fact that Plaintiff and others have historically been allowed to display personal items in their offices, does not convert the private office within a governmental structure away from a nonpublic forum. *Id.*

Furthermore, the nature of the employee mailboxes and Plaintiff's office demonstrate they are nonpublic forums. There are no allegations that the Public Defender's Office in the Skokie Courthouse is open to anyone who does not have business being in that physical space. Plaintiff alleges she does not meet with clients in her office, characterizing it as "in the back corner of the Skokie [Public Defender's] Office where almost no one ever passes." C. ¶ 36. These allegations demonstrate that the Public Defender grants access to areas to a select few, evincing they are nonpublic forums. Furthermore, other Circuits have held that spaces within governmental offices have found these spaces to be nonpublic. See, e.g., *Berry v. Dept. of Soc. Servs,* 447 F. 3d 642, 652-653 (9th Cir. 2006)(office conference rooms not converted to limited public forum but allowing them to be used for events like baby showers for employees); *Principe v. Stewart*, 1986 U.S. Dist. LEXIS 29820, *1 (E.D. Pa.) (no First Amendment violation where Plaintiff was told to remove personal items and decorations from his office). Since both the employee mailboxes and Plaintiff's office are nonpublic forums, Plaintiff cannot allege a violation of her First Amendment rights as long as the Public Defender's regulations of her speech are reasonable and viewpoint neutral.

      B. <u>Regulation of the Plaintiff's speech involving the photograph was reasonable and viewpoint neutral.</u>

In nonpublic forms, speech regulation must be (1) reasonable and (2) viewpoint neutral. *Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 100 F.3d 1287, 1297 (7th Cir. 1996).

1. *The Public Defender's regulation of Plaintiff's speech regarding her photograph was reasonable.*

The Public Defender's regulation of Plaintiff display of her photograph was a reasonable regulation of a nonpublic forum. It was reasonable for the Public Defender to consider the impact of displaying a photograph of an employee holding an assault rifle in a common area of the workspace on his staff and clients. His direction to Plaintiff explained his view of the potential impact and directed her to remove the photograph from the mailbox area where other employees, court personnel and visitors[3] might see it and feel uncomfortable. C. Ex. 2. Rather than forbidding Plaintiff from displaying the photograph, he allowed her to display in her office as long as it was out of public view. *Id.; Pichelmann v. Madsen*, 31 Fed Appx. 322, 327 (7th Cir. 2002)(the availability of other ways of communication is a consideration relevant to the reasonableness of restrictions); *accord Ill. Dunesland Pres. Soc'y v. Ill. Dept. of Natural Res.*, 587 F. Supp. 2d 1012, 1020, footnote 9 (N.D. Ill. 2008). Even though there might have been alternative directions the Public Defender could have chosen, his direction to Plaintiff "need not be the most reasonable or the only reasonable limitation." *John K. Maciver Inst. for Pub. Policy, Inc. v. Evers,* 994 F.3d 602, 610 (7th Cir. 2021). Because the Public Defender's direction to Plaintiff concerning the photograph was reasonable, Plaintiff must plausibly plead the Public Defender's direction to her concerning the photograph was not viewpoint neutral in order to establish a violation of her First Amendment rights.

2. *The Public Defender's regulation of Plaintiff's speech concerning the photograph was viewpoint neutral.*

---

[3] See C. Ex. 3 page 48 (permitting visitors in each office under limited circumstances).

The Public Defender's regulation of Plaintiff's speech was a viewpoint neutral regulation of a nonpublic forum. The Seventh Circuit has explained that viewpoint neutral regulations generally exclude an entire class of speech, such as the entire subject of abortion rather than excluding one viewpoint over another concerning abortion. *Choose Life Ill., Inc. v. White*, 547 F. 3d 853, 865 (7th Cir. 2008). Applying these principles, the Public Defender's directive to Plaintiff is viewpoint neutral. *Compare with DeBoer v. Village of Oak Park,* 267 F. 3d 558 569 (7th Cir. 2001).

There are no allegations that the Public Defender has permitted other employees to make the type of political speech Plaintiff alleges she intended in any physical workplace operated by the Public Defender in any manner. The Public Defender's makes no mention of the Israeli flag or the conflict engulfing that region, demonstrating his decision was not based on Plaintiff's intended messaging in an manner. C. Ex. 2. The Public Defender explained that his directive was solely based on how "displays of firearms can be perceived as threatening" and Plaintiff's "posting of a photograph of [herself] holding a firearm." C. Ex. 2. The letter was very specific that he was concerned about the posting of "a picture of an employee holding a firearm." C. Ex. 2.

Although Plaintiff preemptively alleges the Public Defender's direction to her concerning the photograph was pretext for impermissible viewpoint discrimination, these allegations are not plausibly plead. ¶¶ 42-50, *see, e.g., Kafka v. Grady*, 2014 U.S. Dist. LEXIS 134394, *22 (N.D. Ill.) (ruling on a motion for summary judgment; defining pretext as when "the employer's reason had no basis in fact or the explanation was not the real reason for its action"). With two exceptions, Plaintiff makes only conclusory factual allegations that at indeterminate points over the twenty years she has worked for the Public Defender, her co-workers had actual weapons in

9

the office, photographs of weapon and "display[ed] gun photos." C. ¶¶ 2, 44-45. She does not allege that any employee was allowed to display a photograph in public view either in their office or above any employee mailbox area where the employee was holding an assault rifle. Conclusory factual allegations such as these are not sufficient to withstand dismissal. *Twombly*, 550 U.S. at 555.

The two allegations containing some factual particularities fare no better: (1) a photo sent by a supervisor depicting an actor from the movie The Big Lebowski[4] brandishing a pistol at another actor and (2) a photo of a gun on a table contained in a sign congratulating a co-worker on a win. C. ¶¶ 46-47. The second photograph does not depict any co-worker holding a rifle, so it is not akin to Plaintiff's photograph. As for the photo from the movie, even if the Public Defender was aware of it (which Plaintiff does not allege), it too is not similar to Plaintiff's photograph. There is a significant difference in receiving an email contained a meme depicting fictional characters holding a gun from a movie, which can be deleted with a keystroke, and encountering a physical photograph of your co-worker holding an assault rifle above your employee mailbox. In sum, Plaintiff's allegations that the Public Defender violated her rights by engaging in viewpoint discrimination are not plausibly pled.

> 3. *The interest in the efficient provision of its public services by Defendants outweighs Plaintiff's interest under the Pickering balancing test.*

Even if the Court finds the nonpublic forum analysis is inapposite here, the Public Defender's operational need to efficiently provide public services outweighs Plaintiff's interest in expression in the workplace. The test for protections of public employee's speech first announced by the Supreme Court in *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968),

---

[4] The image contained at C. ¶ 46 depicts a scene characters Walter Sobchak (portrayed by John Goodman) and Smokey (portrayed by Jimmie Dale Gilmore) in the 1998 film, the Big Lebowksi. See https://www.imdb.com/title/tt0118715/characters/nm0000422.

balances "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of public services." *Lane v. Franks*, 573 US 228, 231 (2014); *Rankin v. McPherson*, 483 U.S. 378 (1987). To do so, the Seventh Circuit considers: "(1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her responsibilities; (4) the time, place and manner of the speech; (5) the context within which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision making; and (7) whether the speaker should be regarded as a member of the general public." *Lalowski v. City of Des Plaines*, 789 F.3d 784, 791 (7th Cir. 2015) (citing *Gustassfon v. Jones*, 290 F.3d 895, 909 (7th Cir. 2002)); *Perkins v. O'Malley*, 1996 U.S. Dist. LEXIS 7933 \*\*19-20 (N.D. Ill.). Courts have applied the *Pickering* balancing test at the motion to dismiss stage, albeit in limited circumstances. *Compare with Salaita v. Kennedy*, 118 F. Supp. 3d 1068, 1084 (N.D. Ill. 2015)(denying a motion to dismiss where a prospective employee's comments were made in a public forum and were clearly matters of public concern).

This balancing demonstrates that the Public Defender's interests outweigh Plaintiff's expressional interests in displaying her personal photograph in the workplace. First, allowing a photograph of any co-worker holding an assault rifle to be displayed in a workspace has the real potential to create serious disharmony among co-workers—regardless of its context. *Lalowski*, 789 F.3d at 791 (the potential, not actual disruptiveness, is appropriately considered); accord *Greer v. Amesqua*, 212 F.3d 358, 372 (7th Cir. 2000). Second, Public Defender needs to have confidence that all of his staff can work collaboratively in order to represent any client they are

11

assigned, regardless of the employees' or clients' ethnicity, race or religion or political views. *Perkins*, 1996 U.S. Dist. LEXIS *21-22 (considering "working relationships among superiors and co-workers"). Third, Plaintiff's expression has called into question her judgement and her ability to work with her approximately 700 co-workers and the tens of thousands of clients served by the Public Defender who may have differing ethnicities and political views from her own. Law Office of the Cook County Public Defender. *About the Public Defender* (last visited May 13, 2024). https://www.cookcountypublicdefender.org/about. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (the court may take judicial notice of public records in deciding a motion to dismiss without converting it to a motion for summary judgment). Fourth, the time (during working hours), place (the Public Defender's Office inside of the Skokie Courthouse) and manner of Plaintiff's speech (placing a personal photograph in a communal area of the office) were improper. *Perkins*, 1996 U.S. Dist. LEXIS *22. Fifth, the context of Plaintiff speech—placing a photograph depicted her holding an assault rifle intentionally in an area where it would be viewed by co-workers, court staff, the public seemingly without consideration of the impact it might have on them and the operation of the office—also favors the Public Defender's interests over Plaintiff's. Sixth—whether the matter is one on which debate was vital to informed decision making—is the sole factor which could support Plaintiff's interests over the Public Defender. Seventh, Plaintiff should not be regarded as a member of the general public because her expression occurred while she was working and to a limited audience of her co-workers and court staff. In sum, The *Pickering* balancing test demonstrates the interest in safe, reliable, and efficient operation of the Public Defender's Office outweighs Plaintiff's right of expression while at work under these circumstances. *National Anti-Drug Coalition, Inc. v. Bolger,* 737 F. 2d 717, 726 (7th Cir. 1984).

**III.     The Manual is not a prior restraint on Plaintiff's speech.**

Plaintiff also has not plausibly pled that the Manual is a prior restraint on her speech. C. ¶¶ 51-60. A prior restraint occurs when certain communications are forbidden ahead of the time they are to occur. *Alexander v. United States*, 509 U.S. 544, 550 (1993). In order to qualify for protection, public employees must be speaking on a matter of public concern as a citizen rather than as part of their official duties. *Samuelson v. Laporte Cmty. Sch. Corp.*, 526 F. 3d 1046, 1051-52 (7th Cir. 2008). A prior restraint "does not apply to every restriction that affects speech. *Kole v. Village of Norride*, 941 F. Supp. 2d 933, 952 (N.D. Ill. 2013)(involving commercial speech). The Seventh Circuit generally requires four elements to establish a prior restraint: "(1) the speaker must apply to the decision maker before engaging in the proposed communication; (2) the decision maker is empowered to determine whether the applicant should be granted permission on the basis of its review of the content of the communication; (3) approval of the application requires the decision maker's affirmative action; and (4) approval is not a matter of routine, but involves appraisal of facts, the exercise of judgment, and the formation of an opinion by the decision maker." *Samuelson,* 526 F. 3d 1051.

Plaintiff claims two provisions in the Manual are prior restraints: (1) its prohibitions of Public Defender's employees speaking to the media about the Public Defender's "policies, procedures or official positions on general matters."[5] C. Ex. 3 at page 65, and (2) Public Defenders "who…identify themselves as employees [] shall adhere to the following guidelines: Be respectful. C. Ex. 3 at page 68. Plaintiff alleges she wishes to speak with the media about the Public Defender's policies prohibiting her from displaying the photo and other unspecified matters. C. ¶ 57. Neither provision in the Manual is a prior restraint.

---

[5] *Cf.* C. ¶ 52. Plaintiff is not prohibited from speaking with the media on general matters as alleged. The plain language applies to any employee speaking about the Public Defender's official position on general matters.

A.  Plaintiff has not alleged any protected speech.

Unlike the placement of her photograph, Plaintiff has not alleged any protected speech of public interest that she claims is restrained. C. ¶¶ 55-57. The only definite speech Plaintiff alleges is that she wishes to address the media about the Public Defender's response to the placement of her personal photograph. However, Plaintiff's personal concern about the Public Defender's response to her actions is not a matter of public concern. *Brockett v. Cnty. of Effingham*, 2023 U.S. Dist. LEXIS 102910 *5-6 ("If the speech concerns a subject of public interest, but the expression addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern."). In the absence of any allegations specifying the nature of speech she wishes to make but feels constrained, Plaintiff has not plausibly pled speech which could be of public concern and her prior restraint allegations fail.

B. Plaintiff has not plausibly pled the other elements necessary for a prior restraint.

Plaintiff also has not plausibly plead her prior restraint claim because she has not satisfied the other elements required by the Seventh Circuit. There are no allegations of any mechanisms by which the Public Defender evaluates Plaintiff's speech and rejects it or approves it in a discretionary manner. *Kole,* 941 F. Supp. 2d at 952-953. The Complaint does not plausibly plead a prior restraint.

C. The balancing test applicable to prior restraints suggests dismissal is appropriate.

If the Court reaches the merits of the alleged prior restraints and applies *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 467-69 (1995) ("NTEU"), it must balance "the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the Government." *Milwaukee Police Ass'n v. Jones*, 192 F.3d 742, 750

(7th Cir. 1999.); *Crue v. Aiken*, 370 F. 3d 668, 682-84 (7th Cir. 2004). Applying this test here suggests the restraints are appropriate. If any employee of the Public Defender could make a statement to the media that they were representing the Public Defender's policy, procedure or official position on any general matter, numerous divisive statements could be made that would greatly undermine trust in the office, making it impossible for Public Defender to fulfil its mission to "protect the rights, liberties and dignity of each person whose case has been entrusted to us by providing the finest legal representation." C. Ex. 3 at page 1.

**IV.   The County is not liable to indemnify as the Public Defender is not liable.**

As the claims against the Public Defender are not plausibly pled, the indemnity sought against the County in Count II also necessarily fails. *See, e.g., Moran v. Calumet City*, 54 F.4th 483, 491 (7th Cir. 2022).

## CONCLUSION

Wherefore, Defendants pray this court grant their motion, dismiss the Complaint with prejudice and grant Defendants such other and further relief as the Court deems fair and just.

DATED: May 17, 2024

Respectfully submitted,

KIMBERLY M. FOXX
Cook County State's Attorney

By:   /s/ *Charles T. Little*
Charles T. Little
Cook County State's Attorney's Office
50 W. Washington St., Ste. 500
Chicago, Illinois 60602
(312) 603-3373
Charles.little@cookcountysao.org