### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEBRA GASSMAN )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COOK COUNTY and SHARONE R. )<br>MITCHELL, JR., solely in his Official Capacity )<br>as the PUBLIC DEFENDER OF COOK )<br>COUNTY, )<br>)<br>Defendants. ) | Case No. 24-cv-01279<br><br>Honorable Judge Joan H. Lefkow |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Defendants' Motion misapplies the law, draws prohibited adverse inferences, and prematurely asks for judgment on what amounts to affirmative defenses that have not yet been pleaded. Defendants' argument that Ms. Gassman's photo was displayed in a nonpublic forum should be rejected. The Public Defender made the employee mailbox area available to employees to post items as they see fit, and as such, the mailbox area is a designated public forum.

Regardless, even if it were a nonpublic forum, the Public Defender's censorship of Ms. Gassman violates the First Amendment. Ms. Gassman displayed the photograph in her office for decades, and it was only after the tragic events of October 7, 2023, and the resulting political divisiveness, that the Public Defender made her take it down. This restriction was thus neither reasonable (in light of its past practice) nor viewpoint neutral (in light of its treatment of comparable employee postings). Further, it is premature to adjudicate whether the Public Defender can satisfy all seven elements of the *Pickering* defense, and its argument in this regard rests on baseless factual allegations that are outside the pleadings and on prohibited adverse inferences, both contrary to the requirements of Fed.R.Civ.P. 12(b)(6).

1

Finally, Plaintiff has adequately pleaded a prior restraint claim based on the Public Defender's vague and overly broad media and social media policies, and Defendants have failed to meet their (even higher) burden under the "*NTEU* test" to prove that the restraint is justified, at this early stage. For all these reasons, the Motion must be denied.

**Legal Standard**

Rule 12(b)(6) permits a Court to dismiss a complaint for failure to state a claim. Fed.R.Civ.P. 12(b)(6). A complaint provides adequate notice if it contains sufficient factual matter to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[T]he court will ask itself *could* these things have happened, not *did they* happen."). In a motion under Rule 12(b)(6), the Complaint's factual allegations must be accepted as true and "construed in a light most favorable" to the Plaintiff, with "all possible inferences" drawn in her (not Defendants') favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

**ARGUMENT**

**I.     Defendants Concede Plaintiff Sufficiently Pleaded *Monell* Liability**

Defendants concede, as they must, that Plaintiff has "plausibly pled liability under *Monell*." Doc. 8, at 5. As such, *Monell* liability is not disputed.

**II.    Defendants' Sudden Prohibition of Plaintiff's Photograph Was Not Reasonable or Content-Specific**

**a.    The Mailbox Area is a Designated Public Forum**

Defendants' argument that the mailbox area is not a public forum for purposes of the First Amendment rests on prohibited adverse inferences and misapplies the law. The Public Defender has always permitted CCPD employees to display items of their choosing in the mailbox area, including holiday decorations, photographs, art and cards. Doc. 1, ¶30. With respect to her office,

the Pubic Defender permits employees other than Ms. Gassman to "put pictures, displays, and other messages that are important to them inside their office, without censorship", including weapons. Doc. 1, ¶¶ 38, 43, 44-48. Ms. Gassman's colleagues have "commented favorably" about her photo and expressed admiration for her volunteer service. Doc. 1, ¶¶ 19, 22, 38. By opening these areas up to postings of all varieties, it created a designated or limited public forum.

In *Ysleta Fed'n of Tchrs. v. Ysleta Indep. Sch. Dist.*, 720 F.2d 1429, 1433 (5th Cir. 1983), a public school system similarly opened its mailboxes for use by employee organizations. The Court held that this created a designated public forum for purposes of the First Amendment: "[A]lthough the school was not obligated to grant employee organizations the right to use the school mails at all, once it opened the mail system to all employee organizations without distinction it became bound by the same constitutional standards that apply to a traditional public forum." *Id.*, at 1433, *citing, Perry Educational Assoc. v. Perry Local Educ. Assoc.,* 460 U.S. 37, 103 S.Ct. 948, 957 (1983); *Wandering Dago Inc. v. New York State Office of Gen. Services*, 992 F. Supp. 2d 102, 120 (N.D.N.Y. 2014)("case law makes clear that even when a piece of government property may not be a public forum, channels for public communication—or alternative fora—may well exist within the greater piece of government property").

The same is true here: By opening areas up to employees to post items as they wish, the Public Defender created a limited public forum in that area, and no other inference is permitted at this time.

The nature of the forum cannot be decided at this time on the pleadings alone. In reversing, the Seventh Circuit has held that whether a defendant created a limited public space is fact intensive and requires the District Court "to develop findings on matters such as the forum's past uses, the government's *consistent* policy and practice and the forum's compatibility with

3

expressive activity." *Air Line Pilots Ass'n, Int'l v. Dep't of Aviation of City of Chicago*, 45 F.3d 1144, 1152 (7th Cir. 1995) (emphasis in original). Such an inquiry is premature and improper at this early stage without the benefit of an evidentiary record and where the allegations and inferences must be construed in Plaintiff's favor. *Id.,* at 1154 ("But second—and more importantly—the district court also violated the unquestionable principle that the allegations of a complaint must be taken as true in ruling on a motion to dismiss."); *Planned Parenthood Ass'n/Chicago Area v. Chicago Transit Auth.*, 767 F.2d 1225, 1232 (7th Cir. 1985)("In analyzing whether government property has become a public forum, courts have found it helpful to consider the uses to which the property has previously been put"); *Chicago Acorn v. Metro. Pier & Exposition Auth.*, 941 F. Supp. 692, 700 (N.D. Ill. 1996)(explaining the detailed factual analysis necessary to classify, among other things, "the practice and past policy" of the property at issue); *Wandering Dago Inc.*, 992 F. Supp. 2d at 123 ("it is clear that the forum analysis that the Court must undertake is a fact intensive analysis…Given the nature of this inquiry and the lack of a developed factual record, the Court finds that it is premature to classify the forum at this time").[1]

### b. Defendant's Censorship of Ms. Gassman was Neither Reasonable nor Content or Viewpoint Neutral

Regardless of the forum, the Public Defender's restriction violates the First Amendment. In traditional and designated public fora, the government may only enforce content-based exclusions of speech if there is a showing that the restriction is necessary to serve a compelling state interest and if the exclusions are narrowly drawn to achieve that end. *Air Line Pilots Ass'n, Int'l*, 45 F.3d at 1151. Whereas, in nonpublic fora, restrictions on speech need only be reasonable

---

[1] Defendants cite *U. S. Postal Serv. v. Council of Greenburgh,* 453 U.S. 114, 132, 101 S. Ct. 2676, 2686–87 (1981) for the proposition that a mailbox is a nonpublic forum. This case is factually distinguishable--it analyzed whether it was constitutionally permissible to prohibit mailing letters without postage.

and may not discriminate on the basis of viewpoint. *Id., see also, Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.,* 473 U.S. 788, 809, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) (The standard of review for a non-public forum is that the government's regulation on expressive activity must be viewpoint neutral and "reasonable in light of the purpose of the forum and all the surrounding circumstances.") Neither standard is met here.

Even under the higher nonpublic forum standard, the Public Defender's decision to censor Ms. Gassman after the events of October 7 was neither reasonable, nor content or viewpoint neutral, and certainly a finding to the contrary cannot be made now. *Id., and see, Albrecht v. Metro. Pier & Exposition Auth.*, 338 F. Supp. 2d 914, 923 (N.D. Ill. 2004) ("Merely because a venue has been categorized as a non-public forum does not mean that the government can restrict speech in whatever way it likes.") (quoted source omitted); *Beathard v. Lyons*, 620 F.Supp.3d 775 (C.D. Ill. 2022)(First Amendment claim arising out of employee replacing poster on his private office door sufficient to survive motion to dismiss).

Indeed, Ms. Gassman has worked as an Assistant Public Defender in the Cook County Public Defender's Office since 1997 and has enjoyed a long and successful career. Doc. 1, ¶9. She displayed her photo (without discipline, incident or comment from the Public Defender) for her employment duration, more than 20 years. Doc. 1, ¶2. After the events of October 7, the Public Defender directed her to not only remove the photo from the mailboxes, it also confiscated it and then prohibited her from posting it where it had previously been displayed in her office, and instead required her to hide it from view for the first time in her career. Doc. 1, ¶29. The Public Defender has not similarly regulated other employees' displays and employees have been permitted to display what they choose in their own private offices. Doc. 1, ¶9, 43. And, other Assistant Public Defenders have displayed images that are comparable in form and

5

substance to Ms. Gassman's photo that depict weapons, including as evidenced with particularity by screenshots of two graphic images included in the Complaint. Doc. 1, ¶¶42-50.

That the Public Defender allowed Ms. Gassman to display this photo for twenty years creates a powerful inference that its sudden decision to censor it was neither reasonable nor content neutral, but instead it was taking sides in a partisan debate that had divided Chicago public officials. Doc. 1, ¶¶39-41. Ms. Gassman alleges that the Public Defender's removal and censorship of the photogram was pretextual and based on its content. (Doc. 1, ¶42-50)

Indeed, if the Public Defender's argument that it acted reasonably by making her take the photo down were to be accepted, then it is a fair argument that it acted unreasonably for the last twenty years. The Public Defender can attempt to explain this contradiction at trial, but it is not entitled to these (adverse) inferences now. Similarly, the Public Defender's claim that there is a "significant difference" between Ms. Gassman's photo and the others depicted in the Complaint is, in effect, an admission that its restriction on her photo (and not the others) is content-based and viewpoint specific. Doc. 8, at 10. And, a determination that these photos are not comparable (as Defendants urge here) would require the Court to draw adverse inferences and cannot be made on the pleadings alone. *Tamayo*, 526 F.3d at 1081; *Air Line Pilots Ass'n*, 45 F.3d at 1151.

The only conclusion that can be inferred from the Public Defender's longstanding prior treatment of the photo and its tolerance of other comparable images in the office is that it did not act reasonably and it censored Ms. Gassman, and only her, because of the content of the photo in context with the events of October 7. *Salaita v. Kennedy*, 118 F. Supp. 3d 1068, 1082–83 (N.D. Ill. 2015) (Finding that a determination regarding viewpoint discrimination was premature and noting, "the topic of Israeli–Palestinian relations often brings passionate emotions to the surface."); *Albrecht*, 338 F. Supp. 2d at 925 (Finding it was premature at the pleading stage to

6

decide reasonableness based on the "intricacies of the analysis" and stating, "Construing the complaint in the light most favorable to the Plaintiffs, this Court cannot determine at this time that all of McCormick Place is a non-public forum and that the 2001 or 2004 policies are reasonable as a matter of law.")

The authorities cited by Defendants are inapposite and do not justify dismissing the complaint at this early stage. In *John K. MacIver Inst. for Pub. Pol'y, Inc. v. Evers*, 994 F.3d 602, 608 (7th Cir. 2021), relied on by Defendants, the Court reviewed a summary judgment order on a developed record and did not address the pleading standard. Similarly, in *Kafka v. Grady*, No. 12 C 50123, 2014 WL 4725399, at *9 (N.D. Ill. Sept. 23, 2014), the Court found on summary judgment on a fully developed record that Plaintiff had not established pretext. This decision also has no application to the pleadings.

    c. **The Public Defender's Argument that It Meets All Seven Elements of the *Pickering* Test is Substantively Wrong and Procedurally Premature**

The Supreme Court held in *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) that in the workplace context, a Court must balance the employee's free speech interest with the employer's interest in providing services to the public. The Seventh Circuit has applied the following factors to determine whether a restriction on speech was constitutional under *Pickering*: (1) whether the statement would create problems in maintaining discipline by immediate supervisors or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her daily responsibilities; (4) the time, place, and manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decisionmaking; and (7) whether the speaker should be regarded as a member of the general public. *Wright v. Illinois Dep't of Child.*

7

*& Fam. Servs.*, 40 F.3d 1492, 1502 (7th Cir. 1994). With these highly factual questions, consideration of the *Pickering* test on a motion to dismiss is often "premature" and not appropriate "without a more factually developed record." *Beathard,* 620 F.Supp.3d 775.

Whether the employer meets this standard is an affirmative defense on which the Defendant bears the burden of both pleading and proof. *Harnishfeger v. United States*, 943 F.3d 1105, 1115 (7th Cir. 2019) (Finding at summary judgment that "Requiring proof by a preponderance of the evidence indicates that the public employer's burden [under *Pickering*] is one of persuasion, not merely production, in the nature of an affirmative defense."); *Nichols v. Dancer,* 657 F.3d 929 (9th Cir. 2011)("An employer must provide some evidence by which we can measure whether its claims of disruption are reasonable.")

It is well established that "Orders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defenses. Complaints need not contain *any* information about defenses and may not be dismissed for that omission." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004); *Nat'l Rifle Ass'n of Am. v. Vullo,* 22-842, 2024 WL 2751216, at *9 (U.S. May 30, 2024)(reversing because, at the pleadings stage in First Amendment case, a court should not accept as true the government's claimed justification for its decision).

Thus, it is premature to determine whether the Public Defender has satisfied each of the above seven elements before it has even answered the Complaint (much less proffered evidence), and courts have rejected similar arguments at the pleading stage in First Amendment cases. *Beathard*, 620 F. Supp. 3d 775 (Denying motion to dismiss suit by employee who claimed he was fired for posting "All Lives Matter" poster on his office at work and stating, "Because the parties have not yet had the opportunity to conduct discovery at this stage of the litigation, this

8

Court cannot evaluate the facts under *Pickering* without engaging in speculation."); *Moore v. Dart*, No. 22-CV-1406, 2024 WL 361240, at *9 (N.D. Ill. Jan. 31, 2024) (Rejecting *Pickering* argument at the pleading stage and stating, "*Pickering* contemplates a highly fact-specific inquiry into a number of interrelated factors.") (Citation omitted); *Salaita*, 118 F. Supp. 3d at 1083 (Finding adjudication of the *Pickering* analysis was "premature" on a motion to dismiss.); *Moser v Las Vegas Metropolitan PD*, 984 F.3d. 900 (9th Cir. 2001)(reversing and finding that even on summary judgment, the *Pickering* test results in disputed factual issues).

Further, the Public Defender's arguments under *Pickering* fail in substance. The Public Defender asks the Court to assume facts that it has not yet even alleged (much less established) and to draw prohibited adverse inferences. For instance, the Public Defender's averment that "Plaintiff's expression has called into question her judgement and her ability to work with her approximately 700 co-workers and the tens of thousands of clients served by the Public Defender who may have differing ethnicities and political views from her own" is antithetical to the pleadings. Doc. 8, at 12. This baseless claim conflicts, directly, with numerous allegations in the Complaint, including that Ms. Gassman has had a distinguished career with the office since 1997 and for the vast majority of that time she displayed this photo without rebuke from the Public Defender regarding her "judgement." Doc. 1, ¶¶6, 9; *Tamayo*, 526 F.3d at 1081.

Even diving into the *Pickering* factors, they plainly favor Plaintiff. As to factors examining whether the picture would create problems in maintaining discipline by immediate supervisors or harmony among co-workers: The photograph has been displayed without incident for over two decades. Doc. 1, ¶¶18-22. Veterans like Ms. Gassman regularly display photographs of themselves with weapons; in fact, our modern society regularly honors military personnel with their weapons. Ms. Gassman's photograph is not too different than many

9



honored displays around the world. For example, the photographs on this page show public displays from Chicago (the Victory Monument)[2], Washington (the Three Soldiers Vietnam Memorial) [3], and Britain (and the Normandy Memorial).[4]





As to the factors relating to whether the photo would impact loyalty or impede ability to perform daily responsibilities: Plaintiff has an unblemished history of outstanding service to her clients and use of a photograph has never impacted this. Doc. 1, ¶¶ 12-14. In the face of decades of no problems, permitting speculation that the photo *might* cause disruption is reversible error in a *Pickering* analysis. *See, Godwin v. Rogue Valley Youth Correctional Facility*, 656 Fed.Appx. 874 (9th Cir. 2016)(14 year employee's affiliation with "outlaw motorcycle gang" did not cause problems in the past so "predications of future disruption are purely speculative").

The time, place and manner of the photograph and the context in which it arose all are not remarkable: Plaintiff complied with the pre-confiscation directive to put the photograph back into her office. Doc. 1, ¶¶ 30-33. And, even if the Defendants found the photograph offensive, the Defendants "could not legally remove them if their 'offensiveness' was based on the content of their message". *Brown v. Polk Cnty., Iowa*, 61 F.3d 650, 659 (8th Cir. 1995). The Public Defender has little interest in censoring what photos are acceptable inside a lawyer's office. As such, all the *Pickering* factors weigh in favor of Plaintiff.

    **III.**    **The Public Defender's Media and Social Media Policies Have Created a Prohibited Prior Restraint**

---

[2] https://en.wikipedia.org/wiki/Victory_Monument_%28Chicago%29
[3] https://en.wikipedia.org/wiki/Three_Soldiers_(statue)
[4] https://en.normandie-tourisme.fr/british-normandy-memorial/

Defendants' claims that Plaintiff has not sufficiently pleaded that the Public Defender's employee manual imposes a prohibited prior restraint on speech should also be rejected. As set forth in the Complaint, Ms. Gassman wishes to speak to the media about how the Public Defender's policies led to this lawsuit and the social and political issues that underpin it, but she has refrained from doing so for fear she might be disciplined further. Doc. 1, ¶57.

The Public Defender's policies mandate that only the "Public Defender or designee may speak to the media about the Law Office's policies, procedures or official positions on general matters" and "No employee should initiate contact with the media or hold a press conference regarding policies, procedures, or the Office's positions on general matters, or regarding a particular case." Doc. 1, ¶¶52-53; Doc. 1-3, p. 72. With this prohibition, Ms. Gassman cannot contact or speak to the media about what she perceives as unfair and unlawful Public Defender polices that restrict her use of the Photograph.

The Social Media policy, likewise, provides that employees must "be respectful" on social media and obtain the consent of people or organizations "before sharing." Doc. 1, ¶56. These policies therefore would prohibit Ms. Gassman from sharing on Facebook the articles written about her court case and then criticizing (i.e., not being "respectful") the oppressive manner that her specific supervisors confiscated her photograph. Employees who violate these policies are subject to discipline up to and including termination of employment. Doc. 1, ¶58.

The Public Defender's polices challenged in the Complaint are similar to others that courts have been found violative of the First Amendment. *See e.g., Harman v. City of New York*, 140 F.3d 111, 119–20 (2d Cir. 1998)(restriction on contacting media regarding "policies or activities" of state agency violates First Amendment); *Moonin v. Tice*, 868 F.3d 853, 867 (9th Cir. 2017)(prohibiting employees from communicating about a public program violates First

Amendment); *Lauretano v. Spada*, 339 F. Supp. 2d 391, 420 (D. Conn. 2004)(where police "media policy does not limit its application to instances where the employee speaks as an official spokesperson or representative", the policy is "unconstitutional and unjustified."); *Price v. Saugerties Cent. Sch. Dist.*, 2006 WL 314458, at *4 (N.D.N.Y. Feb. 9, 2006)(policy restricting communications on "school matters" could include matters of public concern and therefore violates the First Amendment); *Crue v. Aiken*, 370 F.3d 668, 680 (7th Cir. 2004)(rule prohibiting university employees and students from having contact with prospective student athletes without express authorization is unconstitutional); *Liverman v. City of Petersburg*, 844 F.3d 400, 407–08 (4th Cir. 2016)(noting a social media policy's "astonishing breadth" that seeks to prohibit the dissemination of any information "that would tend to discredit or reflect unfavorably" because that "could be just about anything"); *Wolf v. City of Aberdeen, S.D.*, 758 F. Supp. 551 (D.S.D. 1991)(ordinance that prohibited city employees from having contacts with members of the media challenged and (1) the provision of the ordinance that prohibited employees from making speeches or advertisements or granting interviews with any member of the media while on duty, unless the employees received prior permission, was unconstitutionally overbroad and punished speech, and (2) the provision that prohibited comments on internal business decisions or departmental rules and regulations impermissibly infringed the employees' First Amendment right to speak out on matters of public concern).[5]

---

[5] *See also, Davis v. New Jersey Dept. of Law & Pub. Safety, Div. of State Police*, 327 N.J. Super. 59, 742 A.2d 619 (Law. Div. 1999)(injunction entered against regulation of the manner in which members of the state police disclose information to the public on matters concerning its operations by requiring prior approval); *Brady v. Tamburini*, 518 F. Supp. 3d 570, 582 (D.R.I. 2021)("the sweeping policy language—"police related matters"—encompasses far more than matters of unprotected speech and would preclude employees from speaking without permission on any issue relating to the Department. This effectively bars comment on matters of public health and safety by those with the most knowledge. ... "Such an all-encompassing ban necessarily works to deprive Police Department employees of their First Amendment right, as citizens, to comment on matters of public [concern], thereby depriving the public of information regarding matters relevant to public health and safety.").

Amendment); *Lauretano v. Spada*, 339 F. Supp. 2d 391, 420 (D. Conn. 2004)(where police "media policy does not limit its application to instances where the employee speaks as an official spokesperson or representative", the policy is "unconstitutional and unjustified."); *Price v. Saugerties Cent. Sch. Dist.*, 2006 WL 314458, at *4 (N.D.N.Y. Feb. 9, 2006)(policy restricting communications on "school matters" could include matters of public concern and therefore violates the First Amendment); *Crue v. Aiken*, 370 F.3d 668, 680 (7th Cir. 2004)(rule prohibiting university employees and students from having contact with prospective student athletes without express authorization is unconstitutional); *Liverman v. City of Petersburg*, 844 F.3d 400, 407–08 (4th Cir. 2016)(noting a social media policy's "astonishing breadth" that seeks to prohibit the dissemination of any information "that would tend to discredit or reflect unfavorably" because that "could be just about anything"); *Wolf v. City of Aberdeen, S.D.*, 758 F. Supp. 551 (D.S.D. 1991)(ordinance that prohibited city employees from having contacts with members of the media challenged and (1) the provision of the ordinance that prohibited employees from making speeches or advertisements or granting interviews with any member of the media while on duty, unless the employees received prior permission, was unconstitutionally overbroad and punished speech, and (2) the provision that prohibited comments on internal business decisions or departmental rules and regulations impermissibly infringed the employees' First Amendment right to speak out on matters of public concern).[5]

---

[5] *See also, Davis v. New Jersey Dept. of Law & Pub. Safety, Div. of State Police*, 327 N.J. Super. 59, 742 A.2d 619 (Law. Div. 1999)(injunction entered against regulation of the manner in which members of the state police disclose information to the public on matters concerning its operations by requiring prior approval); *Brady v. Tamburini*, 518 F. Supp. 3d 570, 582 (D.R.I. 2021)("the sweeping policy language—"police related matters"—encompasses far more than matters of unprotected speech and would preclude employees from speaking without permission on any issue relating to the Department. This effectively bars comment on matters of public health and safety by those with the most knowledge. ... "Such an all-encompassing ban necessarily works to deprive Police Department employees of their First Amendment right, as citizens, to comment on matters of public [concern], thereby depriving the public of information regarding matters relevant to public health and safety.").

The Public Defender's claim that Plaintiff has not pleaded the elements of a prior restraint claim because "There are no allegations of any mechanisms by which the Public Defender evaluates Plaintiff's speech and rejects it or approves it in a discretionary manner" is plainly wrong. The entire complaint alleges that the Public Defender has restricted her speech in a prohibited viewpoint specific manner (as set forth above), and he has given her every reason to believe he will discipline her if she continues to speak up on this subject, as is apparently permitted under the policy. Indeed, the policy as written gives him unlimited discretion in this regard, thus substantiating her fears. Doc. 1, ¶¶52-53, 55.

Defendants' claim that Plaintiff's desire to speak about the significance of her photograph and the discipline she received for displaying it is not a matter of "public concern" should also be rejected. Plainly, the issues in this case are of a matter of public concern by virtue of the plethora of world-wide news outlets that are covering this case.[6]

The First Amendment protects Ms. Gassman's private speech as a citizen, and that protection encompasses her expression of views that are critical of the Public Defender's disciplinary letter reprimanding her for displaying a photograph, even though this speech is partially related to her job. *See*, *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S. Ct. 1951, 1959, 164 L. Ed. 2d 689 (2006) ("The First Amendment protects some expressions related to the speaker's job.") As set forth above, the photograph took on new significance as a result of world events, and the significance of these events overwhelms the personal content of the photograph. *Cf., Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 986 (7th Cir. 2013) (Whether speech is a matter of public concern depends on content, form and context; "if an objective of the speech

---

[6] *See e.eg.,* https://www.jns.org/illinois-public-defender-sues-to-display-photo-with-gun-israeli-flag-in-office/ and https://www.chicagotribune.com/2024/02/16/cook-county-assistant-public-defender-sues-office-over-moving-of-photo-that-depicts-her-with-weapon-in-front-of-israeli-flag/ and https://forward.com/fast-forward/583839/photo-lawsuit-gun-israel-gassman/

was also to bring about change with public ramifications extending beyond the personal, then the speech does involve a matter of public concern.") In the context of the ongoing war in Gaza and protests around the country which continue to dominate the news cycle, it is difficult to imagine how Ms. Gassman's speech on this topic would not relate to a matter of "public concern" as defined by Seventh Circuit jurisprudence. *Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 684 (7th Cir. 2014) ("public concern" is defined to mean "legitimate news interest," or "a subject of general interest and of value and concern to the public at the time of publication.") Certainly, no such (adverse) inference is permitted now.

The Public Defender's claim that its interests as an employer outweigh Ms. Gassman's interests in free speech is premature, for the same reasons as the *Pickering* defense described above. Indeed, when imposing a prior restraint on employee speech, the government has an even greater burden than it has under *Pickering* when it is making an isolated employment decision. *Crue v. Aiken*, 370 F.3d 668, 678 (7th Cir. 2004), *citing*, *United States v. National Treasury Employees Union,* 513 U.S. 454, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995) ("*NTEU*").

Further, Defendants' claims regarding the *NTEU* test fail in substance. In *Harman v. City of New York*, 140 F.3d 111, 116 (2d Cir. 1998), the Court found at summary judgment that an order that required employees of the City's social service agencies refer all contacts from the media to the Defendant before any information is conveyed by the employee violated the First Amendment. In *Crue*, the Seventh Circuit held that a university's prohibition on students, faculty and employees from communicating with prospective students regarding its mascot (which many viewed as racially offensive) violated the First Amendment. 370 F.3d 668, 679–80.

Here, the Public Defender's media policy is similarly unlawful. The policy provides without limitation that "Only the Public Defender or designee may speak to the media about the

14

Law Office's policies, procedures or official positions on general matters." Doc. 1, ¶54. In *Pickering*, the Supreme Court held that a teacher's letter that was critical of the way the Board and the district superintendent of schools had handled past proposals to raise new revenue for the schools was protected by the First Amendment. Here, that same teacher's letter would be prohibited by the CCPD's policy which bars speech regarding the Public Defender's "official positions on general matters."

Further, the Public Defender is charged with defending indigent clients, not opining on the war. 55 ILCS 5/3-4006. It has no compelling interest in regulating private speech regarding matters that have little relationship to its purpose or purview, such as the war in the Middle East. *NTEU,* 513 U.S. at 470. Moreover, any interest the Public Defender might have in regulating this speech is outweighed by Ms. Gasman's interest in voicing her views about world events that touch her personally, regardless of whether the Public Defender approves of what she might say. *Crue*, 370 F.3d at 680 ("The free-speech interest of the plaintiffs—members of a major public university community—in questioning what they see as blatant racial stereotyping is substantial. That interest is not outweighed by fear that an athletic association might not approve of what they say."); *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1183-84 (6th Cir. 1995) (University's harassment policy that prohibited broad categories of speech was void for vagueness where the policy, as written, "does not provide fair notice of what speech will violate the policy" and "[d]efining what is offensive is, in fact, wholly delegated to university officials.")

### IV. The Indemnification Claim against Cook County Cannot be Dismissed

Because Plaintiff's claims against the Public Defender are properly pleaded as set forth above, the indemnity count should not be dismissed. *Brown v. Cook Cnty.,* No. 17 C 8085, 2018 WL 3122174, at *17 (N.D. Ill. June 26, 2018).

**Conclusion**

**WHEREFORE**, for the reasons set forth above, the Motion to Dismiss should be denied.

Dated: 6/6/2024

Respectfully submitted,
**Debra Gassman**

By: /s/ David Fish
    One of Plaintiff's Attorneys

David J. Fish (ARDC #6269745)
Workplace Law Partners, P.C.
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
(312) 818-2407 (Telephone)
dfish@fishlawfirm.com

**CERTIFICATE OF SERVICE**

    The undersigned attorney hereby certifies that on June 6, 2024, he caused the foregoing document to be electronically filed with the Clerk of Court using CM/ECF, which sent notification of such filing to all counsel of record.

                                                 By: /s/ David Fish_____
                                                        One of Plaintiff's Attorneys