IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEBRA GASSMAN ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 24-cv-01279 |
| COOK COUNTY and SHARONE R. ) | |
| MITCHELL, JR., solely in his Official Capacity ) | Honorable Judge Joan H. Lefkow |
| as the PUBLIC DEFENDER OF COOK ) | |
| COUNTY, ) | |
| ) | |
| Defendants. ) | |

**BRIEF OF AMICUS CURIAE, STANDWITHUS**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

This non-party amicus brief is submitted on behalf of the StandWithUs Saidoff Legal Department, a division of StandWithUs, an international, nonprofit Israel education organization founded in 2001 that supports Israel and fights antisemitism around the world. StandWithUs is dedicated to educating people about Israel and combating the extremism and antisemitism that often distort discourse related to Israel. StandWithUs also vigorously challenges antisemitism through legal action. As a United States-based organization with Jewish and Israeli staff and volunteers, StandWithUs has a strong interest in ensuring that the First Amendment rights of Jewish and Israeli public employees are protected, especially as antisemitism and misinformation have skyrocketed in the wake of the October 7, 2023, terrorist attacks on Israel and subsequent war. The First Amendment principles of freedom of speech must protect Jewish and Israeli Americans equally to all other Americans.

**Argument**

I. **Gassman Plausibly Pleads Viewpoint Discrimination.**

"A content-based regulation 'target[s] speech based on its communicative content,'

1

restricting discussion of a subject matter or topic. 'As a general matter,' a content-based regulation is 'presumptively unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to serve compelling state interests.' Our precedents distinguish further a particularly 'egregious form of content discrimination'—viewpoint discrimination. A viewpoint-based regulation targets not merely a subject matter, 'but particular views taken by speakers on a subject.'" *Vidal v. Elster*, 602 U.S. 286, 292-93 (2024) (internal citations omitted). "Indeed, '[w]hen the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant.' It follows that the **government cannot regulate speech 'when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction**.' … The government cannot compel an individual to become an 'instrument for fostering public adherence to an ideological point of view he finds unacceptable.'" *Nat'l Instit. Of Fam. & Life Advocates v. Raoul*, 685 F. Supp. 3d 688, 704 (N.D. Ill. 2023) (internal citations omitted) (emphasis added).

 Gassman alleges that the Public Defender only prohibited her photograph because it was an expression of solidarity with the Israeli people. As a result, the Public Defender's act of prohibiting Gassman's photograph, depicting her serving in the Israeli Defense Forces ("IDF") decades ago, was a viewpoint-based and content-based violation of her First Amendment rights. As Plaintiff explains in opposition to the Motion to Dismiss, even if the mailroom was a nonpublic forum, Gassman alleges that the Public Defender has permitted other depictions of weapons despite its Workplace Violence Policy. (Pl. Resp. to Mot. at 5-6.) Although the Public Defender did not mention the Israeli flag, in his letter directing Gassman to remove the photo of her volunteering in Israel's defense forces, he references the October 7th slaughter of nearly 2000 Israeli civilians by Hamas and other Palestinian terror organizations: "We understand that tragic world events likely motivated this display." (ECF 1-2). We fail to understand the relevancy—or

2

lawfulness—of attributing Gassman's motivation if in fact she had chosen to put up this image after October 7, in fact, Gassman had been displaying this photograph in her office for over twenty years without incident. And, the National Lawyer Guild ("NLG") has entirely failed to address the subsequent confiscation of Gassman's small photograph from *inside* of her private office after October 7.

"When a government restricts or requires speech based on content or viewpoint, the government action must survive strict scrutiny analysis. Under this standard, the government must prove that the restriction or required speech not only furthers a compelling interest but also that they do so in a narrowly tailored way to achieve that goal. Restrictions that are underinclusive or overinclusive are not narrowly tailored. Indeed, to be narrowly tailored, the action must eliminate 'no more than the exact source of the 'evil' it seeks to remedy.'" *Nat'l Instit. Of Fam. & Life Advocates*, 685 F. Supp. 3d at 704.

NLG's argument boils down to this: it claims Israel is a violent and oppressive country so the display of a photograph of its flag with a weapon necessarily threatens workplace violence. This view is based on a false narrative. As set forth in this brief, and as the last seventy-five years have shown, Israel has only defended itself against others who (like Hamas, which calls for the destruction of Israel in its charter) do not believe Jews should have state in their ancestral homeland. It has no interest in conflict; it wants to be left alone. As Golda Meir once said, "If [those who do not want Israel] put down their weapons today, there would be no more violence. If the Jews put down their weapons today, there would be no more Israel."

The participation of *amici* in a District Court case (something that is extraordinarily rare) underscores the highly partisan nature of the Israeli-Palestinian dispute, and the importance of First Amendment protection. As the amicus filings illustrate, especially after October 7, people feel very passionate about their views. These conflicting viewpoints make America remarkable because

3

there is room for all beliefs in the expression marketplace. When our government removes a perceived disfavorable view, it violates the First Amendment.

Here, the Public Defender's actions in censoring Gassman constitute unconstitutional viewpoint discrimination and cannot pass strict scrutiny. The true motivation of the Public Defender cannot be resolved at the motion to dismiss stage. It is plainly a question of fact regarding whether the Public Defender was opposed to Gassman's viewpoint or ordered the photograph confiscated for genuine safety concerns. The government lacks a compelling interest in censoring its employees' views on a war taking place abroad and forcing Gassman to remove her photograph depicting her army service is not narrowly tailored.

### A. The Public Defender Would Not Have Censored Gassman's Photo If She Had Been Standing in Front of United States Flag with A Service Rifle.

The Public Defender's explanation for prohibiting Gassman's photo reeks of implicit bias. The Public Defender expressly prohibited Gassman's photo because he believed it "can be perceived as threatening" in violation of the Cook County Workplace Violence Policy. (ECF 1-2) Amicus NLG contends it was "obvious" that "the Public Defender sought to remove from view of its staff, a threatening and intimidating photo symbolizing violence against a particular ethnic group." (Amicus at 4.) A photo of an individual proudly standing in front of his/her ancestral or national flag holding a weapon is hardly a threat. It can be an expression of patriotism, solidarity, and pride. But the Public Defender disregarded Gassman's intent: "there is no evidence that you acted with malice." *C.f. Counterman v. Colorado*, 600 U.S. 66, 82 (2023) (finding state may only criminalize "true threats" where it shows the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence). Instead, the Public Defender's amicus imparts its own implicit biases in its interpretation that Gassman's photo was threatening.

Rather than accepting that public employees have a right to suggest that the only Jewish

4

state has a right to defend itself from a violent terrorism, the NLG dismisses Gassman's Complaint as arguing "guns are used exclusively for defensive purposes." (Amicus 4-5.) This is a straw man argument. Weapons are imperative to a standing army and are an important part of national defense even if they are not exclusively used as such. Images of weapons can be used to convey diverse views. *C.f. N.J. v. Sonnabend*, 37 F.4th 412, 422 (7th Cir. 2022) (concluding student engaged in protected expression in favor his interpretation of the Second Amendment by wearing t-shirt with handgun image). The first page of Google image results for "defense," in fact, include the following:[1]





The key to determining whether an image of a gun is defensive or threatening is the context, context not appropriately considered on a Motion to Dismiss. It is unlikely that the Public Defender would have censored these pictures, let alone a simple picture like Gassman's, showing an army veteran standing in front of the American flag with a service rifle. This is clear viewpoint

---

[1] Google: Image Search, "Defense," https://www.google.com/search?sca_esv=9aab8662baee94c4&sca_upv=1&rlz=1C1RXQR_enUS1073US1073&q=defense&tbm=isch&source=lnms&fbs=AEQNm0Aa4sjWe7Rqy32pFwRj0UkW0hGkZMqx8DI30etERk2J5bXOwBBQpYtA-fum1vnYD95kkD1pfQ80Y8-DzZq4cc_Qweq2EB8GIquOMumQgr7uez9FF_HeUmlGdCTGHFm71oqtqiWRSIr4jraPaggadv9mwt3TyzSp3NKh-8vhyZl5JEfy97B3FkD9EZjfbBe4GwKwTfCEm9dmgNRZsGG88Iyq6tXQWQ&sa=X&ved=2ahUKEwiQr-jjr76HAxUQv4kEHasvDw8Q0pQJegQICxAB&biw=1280&bih=631&dpr=1.5 (last accessed July 23, 2024)

discrimination based on the Public Defender's viewpoint bias toward Gassman's prior service in Israel's defense.

**B. Gassman Has a First Amendment Right to Express that Israel Has the Same Right to Defend Itself from Violent Attacks as Any Other Sovereign Country.**

Gassman posted her photo in the mailroom the first court day after the brutal slaughter of approximately twelve hundred Israelis and has a First Amendment right to believe Israel has a right to defend itself. On October 7, 2023, Israeli civilians—youth at a dance festival, families in their kibbutzim, Holocaust survivors—were violently attacked by Hamas and at least four other Palestinian armed groups.[2] Just as it was inevitable that the United States would militarily respond to the terrorist attacks on September 11, 2001, it was inevitable that Israel would militarily respond to this unprecedented attack. Just as Americans united in solidarity in the wake of tragedy, Israelis and Jews in the diaspora expressed their solidarity.

The Arab-Israeli conflict has caused immense suffering for both communities. Organized violence against Jews in their ancestral homeland started in the 1920s and has not stopped. In 1947, just two years after the Holocaust ended, Palestinian leaders and Arab states launched a war to wipe out any possibility of a Jewish state. During this war, Israel declared its independence, the Israeli army defeated invading Arab forces, and an estimated 500,000-750,000 Palestinians became refugees and 850,000 Jews fled or were expelled from Arab states. The country is the only Jewish-majority country, and its 25% non-Jewish minority enjoys equal civil rights with Arab and Druze citizens, serving alongside Jewish Israelis in academia, the parliament, on the Supreme Court, and in national service, which is compulsory.

Israel is a tiny country the size of New Jersey and is surrounded by existential threats. To

---

[2] Human Rights Watch, "I Can't Erase the Blood from My Mind," Palestinian Armed Groups' October 7 Assault on Israel (July 17, 2024), available at https://www.hrw.org/report/2024/07/17/i-cant-erase-all-blood-my-mind/palestinian-armed-groups-october-7-assault-israel

Israel's north, Iran-sponsored terrorist organization Hezbollah; to the south, Hamas and other terrorist organizations. Operations Cast Lead in 2008, Pillar of Defense in 2012, Protective Edge in 2014, and Guardian of the Walls in 2021 were responses to massive onslaughts of terrorists' rockets and missiles fired from Gaza at Israeli civilian centers. Hamas and other terrorist groups controlling Gaza have openly called for the destruction of Israel and the mass murder of Jews around the world. They have launched over 30,000 rockets and mortars at Israeli civilians since 2001 in pursuit of their genocidal aims.[3] Just since the October 7th massacre, terrorist groups have launched more than 19,000 unguided rockets into Israel.[4]

## II. CONCLUSION

In summary, accepting all well-pleaded facts in the complaint as true and drawing all inferences in the plaintiff's favor as this Court must, the Public Defender implemented an unconstitutional clear viewpoint and content-based restriction on Gassman's First Amendment rights by prohibiting her from displaying a photograph of her prior service in the IDF. The Public Defender unquestionably cannot satisfy the stringent strict scrutiny test and the motion to dismiss should be denied.

**WHEREFORE**, for the reasons set forth above, the Motion to Dismiss should be denied.

Dated: July 24, 2024

Respectfully submitted,
**StandWithUs**

By: /s/ Yael Lerman
    Yael Lerman, Director
    StandWithUs Saidoff Legal Department

---

[3] American-Israeli Cooperative Enterprise, Jewish Virtual Library, Rocket & Mortar Attacks Against Israel by Date (2001-Present), https://www.jewishvirtuallibrary.org/palestinian-rocket-and-mortar-attacks-against-israel (last accessed July 24, 2024).

[4] Emanuel Fabian, *Over 19,000 rockets fired into Israel since start of war, IDF says,* Times of Israel (June 10, 2024), https://www.timesofisrael.com/liveblog_entry/over-19000-rockets-fired-into-israel-since-start-of-war-idf-says/

> Gail S. Eisenberg
> LOFTUS & EISENBERG, LTD.
> 161 N. Clark, Suite 1600
> Chicago, Illinois 60601
> T: 312.899.6625
> gail@loftusandeisenberg.com

**CERTIFICATE OF SERVICE**

    The undersigned attorney hereby certifies that on July 25, 2024, she caused the foregoing document to be electronically filed with the Clerk of Court using CM/ECF, which sent notification of such filing to all counsel of record.

    *By: /s/ Gail Eisenberg*
    Gail Eisenberg